IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |
|---|---|
| WESLEY IRA PURKEY,<br><br>    Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, *et al.*,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2:19-cv-00517-JMS-DLP

**SCHEDULED FOR EXECUTION**
**July 15, 2020 at 4:00 p.m.**

## SUPPLEMENTAL DECLARATION OF REBECCA E. WOODMAN, ATTORNEY AT LAW

Rebecca E. Woodman, pursuant to 28 U.S.C. §1746(2), declares as follows:

1.      I am an attorney representing Plaintiff Wesley I. Purkey ("Mr. Purkey" or "Plaintiff") in *Purkey v. Barr*, No. 1:19-cv-03570-TSC in the District Court for the District of Columbia ("DDC case") and am admitted to that Court *pro hac vice*. I am admitted as a member of the bar of this Court. I am over eighteen (18) years old and competent to attest and declare to the matters set forth herein. Unless otherwise stated, I have personal knowledge regarding the facts set forth herein.

2.      On June 22, 2020, in the DDC case, I submitted a declaration and supporting exhibits detailing, in pertinent part, communications between Mr. Purkey's defense team and Federal Bureau of Prisons ("BOP") Legal Counsel concerning matters pertaining to Mr. Purkey, including various requests for BOP medical and mental health records and "death watch" surveillance videos, the need for in-person expert visits and evaluations of Mr. Purkey as well as

1

certain medical tests and imaging, and requests for written protocols, policies, and procedures concerning COVID-19 safety measures and testing at USP Terre Haute that would ensure safe access to USP Terre Haute by members of Mr. Purkey's defense team in the weeks leading up to his July 15, 2020 execution date. *See generally* R. Woodman Decl., *Purkey v. Barr*, No. 1:19-cv-03570-TSC (D.D.C. June 22, 2020), ECF No. 23-6, referenced herewith and attached to Plaintiff's Memorandum in Support of Mr. Wesley Purkey's Motion to Preserve This Court's Jurisdiction and to Stay Execution of Wesley Purkey's Pending Final Disposition on the Merits ("Stay Memorandum"), as Ex. C at 150-379. On July 2, 2020, I submitted a supplemental declaration with supporting exhibits in the DDC case that provided updated information concerning additional correspondence with BOP regarding the above-mentioned matters since the date of my previous declaration. *See generally* R. Woodman Decl., *Purkey v. Barr*, No. 19-cv-03570-TSC (D.D.C. July 2, 2020), ECF No. 30-2, referenced herewith and attached to Plaintiff's Stay Memorandum as Ex. H at 29-70. This supplemental declaration provides further updated information concerning additional correspondence with BOP regarding the same matters since the date of my previous supplemental declaration in the DDC case. As set forth in my original declaration of June 22, 2020, *see* Ex. C at 150-51 ¶¶ 1-3, I possess the necessary qualifications to submit this supplemental declaration. The facts set forth in my previous declaration submitted on June 22, 2020 and supplemental declaration submitted on July 2, 2020, are fully incorporated herein as if fully set forth.

3.     As stated in my previous supplemental declaration, on July 1, 2020 I had emailed testing orders written by our expert, Dr. Thomas Hyde, M.D., Ph.D., to BOP Legal Counsel Siereveld and stated that we were seeking to confirm the testing at Methodist Hospital in Indianapolis for two days next week, on July 7 and July 9, 2020. Ex. H at 35 ¶ 11. I further

2

informed BOP Legal Counsel that we would confirm specific scheduling with her so that necessary transportation arrangements for Mr. Purkey could be made. *Id.* at 35 ¶ 11, 64.

4.      On July 2, 2020, I sent a follow up email to BOP Legal Counsel Siereveld, confirming Methodist Hospital's scheduling availability for the following week, presumptively for July 7 and July 9, and requested BOP make the necessary transport arrangements accordingly. Ex. 1.[1]

5.      On July 4, 2020, I received an email from BOP Legal Counsel Siereveld "in response to your last three emails." *Id.* I was advised by BOP Legal Counsel that "outside entities" could not schedule testing for inmates "due to security concerns" and that the hospital we had identified was out of BOP's network and "we cannot take inmates there." *Id.* I was further advised that BOP's "Naphcare schedulers" identified another hospital that could perform the testing we requested, but that the PET scan we required involved "a rarely-utilized $17,000 isotope" not kept in stock at the hospital, and that the hospital would require "written assurances" before scheduling could be finalized. *Id.* BOP Legal Counsel stated that BOP was prepared to provide those assurances upon receipt of written confirmation "that you will reimburse the BOP for all costs associated with the testing you have requested" and that the testing would be scheduled for "next week." *Id.* In response to my question about COVID-related safety precautions taken in transporting Mr. Purkey to the hospital, BOP Legal Counsel stated that all personnel and inmates "wear masks, utilize sanitizer and gloves when necessary, and follow all CDC guidelines," and once at the hospital any rules in place at the hospital would be followed. *Id.* Finally, regarding our longstanding and unfulfilled requests for Mr. Purkey's BOP records, BOP Legal Counsel stated that, "[i]n an effort to streamline your request, I have provided Mr. Purkey's entire medical

---

[1] Numbered exhibits refer to the exhibits attached herewith to this Supplemental Declaration. Lettered exhibits refer to previously filed declarations attached as exhibits to Mr. Purkey's Stay Memorandum.

and psychological files to the AUSAs involved in his case (copied here)" and that "[t]hey have agreed to produce the same to you under the rules for discovery." *Id.* In my response email to BOP Legal Counsel Siereveld the same day, I noted that BOP's apparent shift in position in regard to providing records we had been repeatedly requesting for the past nine months was occurring only eleven days before Mr. Purkey's scheduled execution and on a federal holiday weekend, and that, moreover, BOP Legal Counsel's assertion that the Defendants' counsel had agreed to provide the records "through the discovery process" was meaningless given Defendants' position before the Court is that we are not entitled to discovery or testing. *Id.* To date, none of the records have been provided.

6.      In the same email on July 4, 2020, I requested that BOP Legal counsel provide an estimate of the costs of our requested testing and imaging as soon as possible, based on our repeated confirmation to her and in our Court filings that the Federal Defender Service would front the costs of the testing and imaging. *Id.* In a follow-up email from my co-counsel Michelle Law to BOP Legal Counsel Siereveld on July 7, 2020, Ms. Law provided this confirmation again, and offered to enter into a contract for payment with BOP in order to provide written assurance. Ex. 2. In a response email to Ms. Law from BOP Legal Counsel Siereveld the same day, BOP Legal Counsel indicated that she was still in the process of obtaining the price breakdowns for reimbursement to Naphcare and would provide an itemized statement as soon as possible. *Id.* BOP Legal Counsel also stated that "the tests are scheduled and will go forward." *Id.* At 7:43 a.m. on July 8, 2020, I received an email from BOP Legal Counsel Siereveld addressed to both me and my co-counsel Ms. Law, advising us that Mr. Purkey "is out on a med trip and will not be available for your [previously-scheduled telephone] call this morning." Ex. 3. On July 10, 2020, an email from BOP Counselor Andrew Sutton addressed to me and my co-counsel Ms. Law

advised that Mr. Purkey was again not available for a previously-scheduled telephone call that morning because he was "out of the institution for a medical appointment. Ex. 4.

7.    To date, we have not received from the BOP any of the medical and psychological records pertaining to Mr. Purkey despite our repeated requests for such records over the past nine months, nor have our experts been able to conduct the necessary in-person examinations of Mr. Purkey we have repeatedly requested. Moreover, despite being informed by the BOP that the requested scans and imaging were conducted on or after July 8, 2020 and that one of Plaintiff's experts would receive those scans and imaging from the BOP by Saturday, July 11, 2020, Plaintiff's expert has yet to receive those scans and imaging for review. On Sunday, July 12, 2020, the BOP informed Plaintiff's counsel that the earliest Plaintiff's expert will receive the scans and imaging is now Tuesday, July 14, 2020, *i.e.*, the day before the scheduled execution of Mr. Purkey.

8.    On July 12, 2020, I learned that a declaration had been publicly filed in a lawsuit brought by victim family members in relation to the execution of Daniel Lee scheduled for Monday, July 13, 2020, concerning the execution team at USP Terre Haute. I subsequently obtained a copy of the declaration of BOP Regional Counsel Rick Winter. Ex. 5. Mr. Winter's declaration discloses that a BOP staff member involved in execution preparations at USP Terre Haute tested positive for COVID-19 on July 11, 2020. *Id.* ¶¶ 3, 5. The declaration further discloses that the staff member informed the BOP on July 8, 2020, about his exposure to individuals with COVID the previous weekend. *Id.* ¶ 4. Between the time of the staff member's exposure to COVID-19 and his departure from USP Terre Haute on July 8, the staff member participated in execution planning meetings and was in the unit where death row prisoners are

held.  *Id.* at ¶ 6.  The BOP is only now attempting to determine the individuals with whom the staff member has been in contact.  *Id.* ¶ 9.

I DECLARE PURSUANT TO 28 U.S.C. §1746(2) AND UNDER PENALTY OF PERJURY THAT THE FOREGOING FACTS ARE TRUE AND CORRECT.

DATED: 7-13-2020

REBECCA E. WOODMAN
ATTORNEY AT LAW
COUNSEL FOR MR. PURKEY

6

# Exhibit 1

Sunday, July 12, 2020 at 11:45:01 Central Daylight Time

**Subject:** Re: Purkey- expert visitation

**Date:** Saturday, July 4, 2020 at 2:48:20 PM Central Daylight Time

**From:** Rebecca Woodman

**To:** Katherine Siereveld

**CC:** Rick Winter, MichelleLaw, BrianFleming, ChasMcAleer, Brian Casey

Dear Katherine:

Your email makes patently clear that your failure and refusal to produce Mr. Purkey's medical and psychological records over the last nine months was unwarranted, unjustified and tactical. Waiting to deploy this supposed shift in position until a federal holiday weekend which is just 11 days before the scheduled execution is particularly outrageous.

What your email does not make clear is when we will actually receive the records. Since the current position of Defendants' counsel before the Court is that we are not entitled to any discovery or testing, your assertion that they have agreed to produce the records "under the rules of discovery" is rather meaningless. You and/or they should immediately, clearly and unequivocally inform us whether and when we will receive those records. When doing so perhaps you and/or they will also confirm whether and when we will be receiving the videos and recent disciplinary records that we have been requesting as well.

Your email is also unclear regarding where the testing will occur and the contact information for the appropriate persons at that facility. Please provide that information as soon as possible.

Finally, we have repeatedly confirmed to you and in filings with the Court that the Federal Defender Service will front the costs of the requested testing and imaging. However, we need an estimate regarding all of the costs for which you are requesting payment.  Please provide that estimate as soon as possible.

Sincerely,

Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Saturday, July 4, 2020 at 8:35 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, BrianFleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,

This is in response to your last three emails.

Unfortunately, due to security concerns, outside entities are unable to schedule testing for inmates. Additionally, the facility you identified is out of network for us and we cannot take inmates there. Our Naphcare schedulers have been able to identify another hospital that can also perform the testing you have requested. Since the PET scan involves a rarely-utilized $17,000 isotope which is not kept in stock at the hospital, they require written assurances before they can finalize scheduling. The BOP is prepared to provide those written assurances as soon as we receive written confirmation from you that you will reimburse the BOP for all costs associated with the testing you have requested. To be clear, the testing is being scheduled without the assurances in hand, but we cannot complete the testing without them. The testing is being scheduled for next week.

When BOP personnel transport inmates to the hospital, all personnel and the inmate wear masks, utilize sanitizer and gloves when necessary, and follow all CDC guidelines. Once at the hospital, both the escorting staff and the inmate will follow any rules put in place by the treating hospital.

With regard to the requested medical and psychological records, in an effort to streamline your request, I have provided Mr. Purkey's entire medical and psychological files to the AUSAs involved in his case (copied here). They have agreed to produce the same to you under the rules for discovery.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/2/2020 5:53 PM >>>
Dear Katherine:

Following up on my email yesterday transmitting the medical orders issued by Dr. Hyde, we have spoken with the hospital today and confirmed they have considerable scheduling availability next week for the tests and imaging. You should presumptively assume that the tests will occur next Tuesday, July 7, and, because of the required separation, on Thursday, July 9. We request that you make the necessary transportation arrangements accordingly.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

**From:** Rebecca Woodman <rewlaw@outlook.com>
**Date:** Wednesday, July 1, 2020 at 5:04 PM
**To:** Katherine Siereveld <ksiereveld@bop.gov>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Dear Katherine:

Further to my email yesterday, Thomas M. Hyde, M.D., Ph. D., has issued the attached medical orders for the testing and imaging we have previously identified to you.  My understanding is that the specific facility within the Indiana University Health System at which the testing and imaging will be performed is the Methodist Hospital in Indianapolis.  We are seeking to confirm the scheduling of the testing and imaging for two days next week, possibly Tuesday, July 7 and Thursday, July 9.  We will confirm with you the specific scheduling once we have confirmation so that you can make the necessary transportation arrangements for Mr. Purkey.

In the meantime, please let me know if you have any questions regarding the foregoing.

Sincerely,
Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Friday, June 26, 2020 at 12:34 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,

I think there may be some confusion regarding the COVID-19 testing data you are seeking.  You are correct that the BOP webpage did not initially have detailed data about the testing, but that is no longer the case.  If you scroll to the section after the facility-by-facility breakdown of active cases, you will see a section which details the numbers of completed tests, pending tests, and positive tests.  That data is shown both in the aggregate and for each facility.  The data is further explained on the webpage under the heading "About the Data" which I have copied here:

*About the Data*
*These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting.* ***Not all tests are conducted by and/or reported to BOP***.

*The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.* As for the sanitation stations, yes, those include hand sanitizer and individual sanitizing wipes liberally available at points between the front entrance and the SCU.  This is obviously in addition to the soap and water provided in the restrooms, and any additional sanitizer you wish to request from staff.  The individual visiting rooms are wiped down before and after visits.  Additionally, to the extent possible, we are attempting to assign visiting spaces to each inmate.  For example, we have 3 non-contact visiting rooms and have so far only had social visits requested for 3 inmates.  Until we have more than those three, our intent is to assign one visiting room to a particular inmate to further reduce any possibility of cross-contamination.

I am unaware of any outstanding requests for medical and psychological records, but if you can let me know when and how you requested them, that can help me track them down.  As a general rule, the two quickest ways to receive medical and psych files is for either your client to request a copy of his own records via a request to staff, which he can then forward to you; or, request those records through the discovery process.

With regard to the outside testing you are now requesting, we cannot provide you with specifics as to the logistics for security reasons.  Once the tests are confirmed, we will be able to advise that one or more facilities will be able to conduct the testing you have requested within the diagnostic parameters you have outlined.  You will receive the results which will have the names of the facilities and medical personnel as part of the records.  To that end, I will let you know if any additional information is required to successfully schedule those tests.

The BOP does not pay for unnecessary outside tests on inmates which are not clinically indicated.  Per our medical and psychology staff, a review of Mr. Purkey's records reveals no clinical indication for the testing you are requesting.  Our medical and psychology staff simply cannot order testing which they do not believe is necessary to the care of that individual.  Please let us know how you would like to proceed.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 6/25/2020 8:39 PM >>>
Hi Katherine:

Thank you for your emails dated June 24, 2020 (4:26 p.m.) and today at 1:02 p.m.  In response, and further to my prior emails on this topic, including in particular my email dated June 20, 2020 (12:55 p.m.), I respond as follows.

Once again, your plan for visits at USP Terre Haute, which appears to be materially unchanged from the plan

that was implemented prior to the COVID-19 lockdown, remains insufficient to address our concerns.

As I have stated numerous times, in order for us to make informed decisions about the safety of any visitation at USP Terre Haute – whether by Mr. Purkey's legal counsel, expert witnesses, spiritual advisors, friends or family members -- we need much more information. The critical nature of the associated risks and the essential role of data to make safety determinations should come as no surprise to you.  Indeed, the need for extensive information to evaluate COVID-19 related health risks in prisons is the subject of virtually daily court opinions (*see* the attached June 18, 2020, decision by the U.S. District Court for the District of Columbia) and media exposes.  *See* T. Thomas, "How U.S. Prisons Became Ground Zero for Covid-19," *Politico* (June 25, 2020),
https://www.politico.com/news/magazine/2020/06/25/criminal-justice-prison-conditions-coronavirus-in-prisons-338022.

For example, you still have not provided all the testing data we and our experts need to evaluate the risks associated with visitations and to develop necessary mitigation risks. We are well aware of the COVID-19 statistics reporting the  number of confirmed positive cases posted on BOP's website. We are requesting critical contextual information about those positive numbers, including information about the numbers of tests administered, the number of pending test results, and the numbers of positive and negative results.  We have requested this information from you and in our court filings, but the answers have still not been forthcoming.

Additionally, we have no information from you at this time about sanitation, the frequency of surface cleaning and disinfecting throughout the buildings from the front door entry point to the visitation booths, and I have no idea what you mean when you refer to "sanitizing stations." Is that shorthand for the hand sanitizer you've mentioned in our previous correspondence? Nor is it clear what you mean by "successful visiting for the inmates who have execution dates" – since COVID-19 has a 2-14 day incubation period following exposure to the virus, the mere fact that a visitation has taken place is in no way an indicator of "success," however defined.  (It is worth noting that the apparent continued prohibition on visitations with prisoners at USP Terre Haute who are not facing execution is proof enough of the high risk to which prisoners, staff and visitors are exposed at the prison.  "Excepting" certain prisoners for pre-execution visitations does not preclude that risk.)

Leaving aside what your willingness and apparent ability now to grant Mr. Purkey an exception to be tested says about your previous insistence on a court order (which we sought but were denied in prior litigation because there was not a *Ford* claim pending, which there now is in federal district court), many questions remain before we can go forward with any testing. Specifically, we need to know the precise logistics of accomplishing the testing in the short time period available. In which hospital will the testing take place? Does the hospital have the equipment and personnel available to conduct the blood tests, MRI, DTI, two types of PET scans (one using a radioactive tracer to measure glucose metabolism in regions of the brain , and a second measuring the deposition of an abnormal protein in the brain called amyloid-b), and EEG that we are requesting? We need to know the logistics of transporting our client for the testing, e.g., how will it be done safely, when it can be done, what steps need to be taken in order to facilitate transportation, such as

what sort of paperwork will be required?

With respect to the issue of blood tests, and given that Mr. Purkey will need to be transported to a hospital for the necessary imaging tests, it seems unnecessary for prison staff to conduct the necessary blood tests, which can be performed by hospital staff.  However, to respond to your inquiry, the necessary blood tests would include the following (please excuse any layperson imprecision):

Complete Blood count and differential;
Fasting blood glucose;
Liver function tests AST ALT GGT;
Bilirubin level;
Renal function (BUN and creatine);
Thyroid;
Lyme;
Syphilis;
HIV;
B12; and
Folate.

Finally, we are not prepared to accept your denial of responsibility for the costs of testing, particularly your apparent justification that the requested testing is not "clinically indicated."  We have submitted substantial evidence in the pending *Ford* litigation to demonstrate that such testing is, in fact, warranted and clinically indicated, regardless of how such testing might also inform adjudication of the pending litigation.  That conclusion will become even more evident when we and our experts are able to review Mr. Purkey's complete medical records and video surveillance records, which we have been repeatedly requesting and which have been withheld from us.  Indeed, those records may demonstrate in further detail that the requested testing has been "clinically indicated" for some time but not administered by the Bureau of Prisons.

In closing, having confirmed for you the necessary blood tests and imaging that need to occur, we will await the details regarding how that testing will be implemented.  We will also await the full scope of COVID-19 related information we have requested and, whether extant or not, the details of <u>all</u> of the safety protocols necessary to protect the health of Mr. Purkey, prison staff and visitors given the COVID-19 statistics and conditions of the prison, on the basis of which we and our experts can determine whether and under what circumstances visits with Mr. Purkey can be scheduled and safely conducted.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Thursday, June 25, 2020 at 1:02 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
I have re-attached the email chain between Michelle Law and myself regarding the costs of the different tests which were discussed at that time.  As a reminder, the BOP cannot order or pay for testing which is not clinically indicated.  I am working to confirm that those costs are consistent with what they would be today.  The security costs will likely remain the same, but I am running that to ground as well.  Please let me know as soon as possible the specific parameters of the additional testing which was not previously identified so I can get cost estimates to you and we can begin scheduling.
Thanks,
Katherine

>>> Katherine Siereveld 6/24/2020 4:25 PM >>>
Hi Rebecca,

As discussed in our prior emails, the BOP's plan for legal visits can be found on the BOP website, https://www.bop.gov/coronavirus/covid19_status.jsp.  Additionally, the Terre Haute specific numbers you requested can be found here:  https://www.bop.gov/coronavirus/.  I also advised that masks are to be worn at all times in the facility.  If you do not have a mask, one will be provided to you.  Additionally, we have sanitizing stations available and plexiglass has been installed in the contact visitation booth.  We have already begun successful visiting for the inmates who received execution dates.  It is unclear what additional protocols you are seeking.

In the email chain you attached between Ms. Law and I, it was clear that she was seeking a court order.  While it is still our position that any medical or psychological testing which is not clinically indicated (such as this) requires a court order, we recognize the urgency of the time frame and are willing to make an exception if you did not yet obtain a court order as indicated in the email from 10/4/2019 unless an order was issued denying your request for the outside testing.  Did the Court deny your request or was an order not sought?

BOP staff will not perform any of these tests.  All of the requested tests would need to be performed by outside medical personnel.  The only exception might be the blood tests.  BOP personnel would likely draw the blood and then send to an outside lab for the requested tests.  Do you have a list of the tests? I believe the two attached orders are all that I have from October 2019.

Finally, I will be in a deposition tomorrow so you will likely receive an out of office reply from me.  I will still

have access to email and can step out to call if necessary.

Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/24/2020 9:30 AM >>>
Dear Katherine:

We are waiting for the BOP written safety plan/protocol/policy relating to COVID-19 in order to determine if and when it is safe to schedule an expert visit. I have requested these written materials several times now, and I renew my request here. I appreciate that BOP now appears to be open to testing by our experts after previously refusing to allow this type of testing without a court order. (See attached email correspondence.) Does this constitute a reversal of BOP's prior position? In addition, were such testing to be performed by BOP personnel, we would first need information about who would be administering the tests, the precise equipment that would be used, and the qualifications, training, and experience of the personnel who would be administering the following tests that we require:

1.   An MRI with and without contrast,

2.   Two types of PET scans

3.   An EEG

4.   A variety of blood tests

5.   A lumbar puncture and cerebrospinal fluid assays (spinal tap)

6.   A DTI scan

Please provide the requested information on or before close of business on Friday, June 26, 2020, so that we can make an informed judgment about scheduling expert visits.

Best,

Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Tuesday, June 23, 2020 at 12:48 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
Just following up on this.  I know we discussed expert visits during our conversation, but I don't recall if you have made arrangements for Dr. DeRight to come to the institution?  I did not see any follow up information on these specific issues.  I went ahead and had our Medical start working on getting him scheduled for an MRI and EEG, but we will need the parameters the doctor is looking for in addition to the specific blood work he needs.
Thanks,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476

>>> Rebecca Woodman <rewlaw@outlook.com> 6/15/2020 9:38 AM >>>
Dear Katherine: As you know, our expert neuropsychologist, Dr. Jonathan DeRight, conducted an in-person evaluation of Mr. Purkey last year and found that Mr. Purkey suffers from Alzheimer's disease, a progressive dementia. Because it has been more than a year since Dr. DeRight last evaluated Mr. Purkey, it is essential that Dr. DeRight conduct an in-person follow-up evaluation to obtain a current assessment of Mr. Purkey and extent of progression of his disease, and we would like to schedule this evaluation as soon as possible. A letter that I received from Dr. DeRight requesting the in-person evaluation is attached. In addition, Dr. DeRight in his letter is requesting up-to-date neuroimaging and blood laboratory results, which are necessary to assessing Mr. Purkey's current abilities and disease progression. I recall that we have discussed ways to accomplish brain imaging tests previously, and we would like to be able to arrange such testing in conjunction with Dr. DeRight's evaluation.

Please let me know of upcoming dates and times for Dr. DeRight to visit Mr. Purkey at USP-Terre Haute to conduct an evaluation, and the logistics of scheduling the requested brain imaging. And please don't hesitate to contact me if you have any questions. Thanks so much.

Best,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

# Exhibit 2

**Sunday, July 12, 2020 at 11:32:23 Central Daylight Time**

| | |
|---|---|
| **Subject:** | Re: Purkey Medical Tests-- Contract for Reimbursement |
| **Date:** | Tuesday, July 7, 2020 at 6:08:19 AM Central Daylight Time |
| **From:** | Katherine Siereveld |
| **To:** | Michelle Law |
| **CC:** | Chas McAleer, Rebecca Woodman |
| **Attachments:** | ATT00001.png |

Hi Michelle,
They are still getting all of the price breakdowns for me.  The tests are scheduled and will go forward.  I have not had anyone ask me about a contract from you, I think the email from Rebecca (and this one from you) should be sufficient.  Apparently, the way that it works is that NaphCare will pay as they usually do and then you will reimburse them.  I will get an itemized statement ASAP.
Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Michelle Law <Michelle_Law@fd.org> 7/6/2020 4:50 PM >>>

Katherine:

As we have previously indicated to you and the court, the Federal Defender (FD) will reimburse the BOP for the cost of medical tests ordered by Dr. Hyde.  To provide written assurance, the FD will enter into a contract with the BOP to provide payment for the medical tests.  To write the contract, however, I need to know the cost of each test (which we requested several days ago) and the name of the person who will execute the contract on behalf of the BOP.  Once this information is provided, I'll promptly send a written contract to the BOP official designated to execute the contract.

Thanks –

Michelle




## Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022

FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

# Exhibit 3

**Sunday, July 12, 2020 at 11:31:08 Central Daylight Time**

**Subject:** Legal Call this morning

**Date:**    Wednesday, July 8, 2020 at 7:43:27 AM Central Daylight Time

**From:**    Katherine Siereveld

**To:**      Michelle Law, rewlaw@outlook.com

**CC:**      Andrew Sutton

Good morning,
Mr. Purkey is out on a med trip and will not be available for your call this morning.  Mr. Sutton advised that if he is back early enough this afternoon, he might be able to reschedule for you.  He is copied here.  Please let him know if you would like him to try to schedule you this afternoon.
Thanks,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476

# Exhibit 4

| **From:** | Andrew Sutton |
|---|---|
| **To:** | rwoodman@dplclinic.com; Michelle Law |
| **Subject:** | Purkey legal call 7-10-2020 |
| **Date:** | Friday, July 10, 2020 8:27:42 AM |

Good morning,

I regret to inform you that inmate Purkey is unavailable for his legal call this morning.  He is out of the institution for a medical appointment.

A. Sutton
Special Confinement Unit
Correctional Counselor
FCC Terre Haute
812-244-4400
asutton@bop.gov

I have no way of knowing the number of things that I said I would never forget, but have already forgotten.

"This message is intended for official use and may contain SENSITIVE information.  If this message contains SENSITIVE information, it should be properly delivered, labeled, stored, and disposed of according to policy."

# Exhibit 5

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-00336-JMS-MJD |
| ) | |
| WILLIAM P. BARR, ET AL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>DECLARATION OF RICK WINTER</u>

I, Rick Winter, do hereby declare and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as Regional Counsel for the BOP's North Central Region. I have held this position since October 2016. I have been employed by the BOP since 1994.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

3. I previously provided a declaration in this matter stating that "as of July 2, 2020, ninety two staff members at FCC Terre Haute have been tested for COVID-19. Of those, one staff member at the FCI previously tested positive but has recovered. At the USP, no staff members have tested positive for COVID-19. No FCC staff members are currently positive for COVID-19." See ECF No. 33, Ex. A ¶ 7.

4. On the morning of July 8, a BOP staff member at FCI Terre Haute learned that individuals with whom he visited the prior weekend tested positive for COVID-19. The staff member

1

immediately left work, which was at 11:30 a.m., and entered self-quarantine (i.e., he has not returned to FCI Terre Haute since departing on July 8).

5.  On the evening of July 11, the staff member informed BOP that he received a positive COVID-19 test result earlier that day.

6.  Between the staff member's potential exposure and his departure on July 8, he, among other things, attended the law enforcement meeting with outside law enforcement in preparation for the scheduled executions; attended a meeting regarding the handling of demonstrators at the scheduled executions; and attended to an issue at the SCU.

7.  Although the staff member did not wear a mask at all times during this period, he did not come into contact with the BOP execution protocol team, which arrived the afternoon of July 8 (i.e., after the staff member had departed), nor does he recall coming into contact with any members of the Crisis Support Team (CST), who are involved in victim witness transportation and logistics.

8.  During this period, the staff member did not visit the execution facility or the adjacent command center, nor does he recall being in the witness staging area or any of the vehicles that will transport witnesses for the executions.

9.  BOP is taking steps to determine with whom the staff member was in contact, and will follow guidelines issued by the Centers for Disease Control and Prevention.  For the duration of the execution or until a negative test is obtained, BOP will ensure that those staff members identified as having had contact with the infected staff member do not have contact with the inmates scheduled for execution, ministers of record, witnesses of the execution, attorneys, or press.

10. BOP will continue to perform the mitigation measures identified in my prior declaration dated July 6, including temperature check and symptom screen all individuals arriving at

2

FCC Terre Haute and disinfecting all areas that will be visited by ministers of record, witnesses of the execution, attorneys, and press.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 12th day of July 2020.

_Rick Winter (JC)_
Rick Winter
Federal Bureau of Prisons

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on the 14th day of July, 2020, I caused Supplemental

Declaration of Rebecca E. Woodman, Attorney at Law to be filed electronically with the Clerk

of the Court via CM/ECF, with all authorized parties being served electronically via CM/ECF.

*/s/Rebecca E. Woodman*
Rebecca E. Woodman (Court appointed)
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
Telephone: (785) 979-3672
Email: rewlaw@outlook.com

**Counsel for Petitioner**
