UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY IRA PURKEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 2:20-cv-00365-JRS-MJD |
| | ) | |
| WILLIAM P. BARR, in his official | ) | |
| capacity as the Attorney General of the | ) | |
| United States; MICHAEL CARVAJAL, in | ) | |
| his official capacity as the Director of the | ) | |
| Federal Bureau of Prisons; and WARDEN, | ) | |
| in his official capacity as | ) | |
| Complex Warden for Terre Haute Federal | ) | |
| Correctional Complex, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO STAY

Minutes after the Supreme Court vacated a stay and cleared the way for his immediate execution, Wesley Purkey filed a petition for habeas corpus in this Court seeking a stay based on the precise claim that the Supreme Court had just vacated. Purkey could have brought his claim in his earlier habeas peititon and did not, and so has abused the writ. Purkey's claim also lacks merit, and he has unnecessarily delayed by waiting until the day after his execution day to bring it. This Court should deny his claim and permit his execution to go forward immediately. The government intends to executed Purkey at 4:30. a.m.

## INTRODUCTION AND BACKGROUND

Wesley Purkey was scheduled to be executed last night at 7:00 p.m. A district court in the District of Columbia enjoined that execution yesterday morning, and at shortly before 3:00 a.m. this morning, the Supreme Court vacated that injunction and cleared the way for the government to execute the sentence imposed seventeen years ago.

Minutes later, Purkey filed a 75-page petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 with this Court along with a corresponding motion to stay his execution. In his petition, Purkey alleges that he is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986), which, up until today, is a claim he had insisted on pursuing in the District of Columbia, despite acknowledging both that it could be brought in this Court and that there were substantial jurisdictional questions with bringing it in any other court. Now Purkey has taken his *Ford* claim on the road. The United States respectfully requests that this Court deny Purkey's motion for a stay, effective immediately, to permit the government to proceed with the scheduled execution.

As an initial matter, Purkey has not shown that he has a significant possibility of success on the merits. This is not Purkey's first § 2241 petition in this Court—in fact, it is his second since he was initially scheduled for execution. Yet Purkey did not bring his *Ford* claim in his initial § 2241 in this Court though he admits it was ripe at the time. Because he could have brought his *Ford* claim then and did not, he abuses the writ by attempting to bring it now. This is especially true here, where it appears he filed in the District of Columbia for strategic reasons and the government actively opposed jurisdiction in that court at every turn.

Moreover, even if this Court could consider his petition, Purkey has failed to demonstrate that he is likely to succeed on the merits of his claims that he is incompetent to be executed or that his due process rights will be violated absent a competency hearing. A prisoner must make "a substantial threshold showing" of incompetency before he is entitled to a hearing on his competency, *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007), which Purkey has never done. To the contrary, by his own account, Purkey understands the reason for his execution. The Government opposed Purkey's prior *Ford* claim on both these substantive and other procedural

grounds in the Supreme Court, and the Supreme Court vacated the stay with an order that did not suggest it relied solely on procedural grounds.

Even setting aside the merits, Purkey unnecessarily delayed by waiting until very nearly the literal last minute in bringing his itinerant *Ford* claim in the proper court warrants denial of his motion for an injunction. *See Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at \*1-\*2 (7th Cir. Dec. 6, 2019). The public interests in "punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (citation omitted), and "timely enforcement of a [death] sentence," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019), would be frustrated by the last-minute injunction. So, too, is the public interest in "preventing forum shopping by habeas petitioners." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). The balance of the equities weighs the same way: Purkey death sentence has been reviewed multiple times and withstood all challenges. This Court should immediately deny his motion for a preliminary injunction and permit Purkey's execution to proceed as scheduled.

## STATEMENT

Purkey kidnapped, raped, and murdered 16-year-old Jennifer Long. *United States v. Purkey*, 428 F.3d 738, 744-45 (8th Cir. 2005). He then dismembered her with a chainsaw and burned her remains. *Id.* at 745. He confessed to Long's murder while serving a life sentence in Kansas for his later murder of 80-year-old Mary Ruth Bales, whom he bludgeoned to death with a hammer. *Id.* at 745-46. The district court sentenced him to death, and the Eighth Circuit affirmed. *Id.* at 764. The district court later denied his motion under 28 U.S.C. § 2255, and the Eighth Circuit again affirmed. *Purkey v. United States*, 729 F.3d 860, 861-62, 869 (8th Cir. 2013)

On July 25, 2019, the Attorney General scheduled Purkey's execution for December 13, 2019.

On August 27, 2019, Purkey filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Southern District of Indiana, seeking relief on eight grounds, including that his death sentence violated *Atkins v. Virginia*, 536 U.S. 304 (2002). Petition, *Purkey v. United States*, No. 19-CV-00414 (S.D. Ind. Aug. 27, 2019), ECF No. 1. Though he included an *Atkins* claim challenging the imposition of his death sentence based on his alleged incompetency when he committed the offense, *see id*. at 192-200, he did not include a *Ford* claim challenging his present competency to be executed.

During the course of that § 2241 litigation, Purkey's counsel told this Court that they were "diligently preparing a petition that Mr. Purkey is incompetent to be executed, a claim that did not become ripe until his execution date was set and has required additional investigation and updated mental health evaluations and testing." *See* Ex. 28 to Woodman Decl. at 5, ECF No. 7-30. They sought ex parte an order directing that Purkey undergo certain brain imaging tests that "will also bear on the question of whether Mr. Purkey is competent to be executed, an issue that is ripe in his case." Ex. 20 to Woodman Decl. at 1, ECF No. 7-22; Compl. ¶ 6. According to Purkey's counsel, that ex parte motion was denied by the Southern District of Indiana because Purkey did not bring his Ford claim along with his then-pending § 2241 petition. Woodman Decl. ¶ 18, ECF No. 23-6.

On November 20, 2019, this Court denied Purkey's petition as barred by § 2255(e), *Purkey v. United States*, No. 19-cv-00414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019), and the Seventh Circuit affirmed, *Purkey v. United States*, __ F.3d __, No. 19-3318, 2020 WL 3603779, at *11 (7th Cir. July 2, 2020). Despite ruling for the United States on the merits, the Seventh

Circuit panel nonetheless "temporarily stayed" Purkey's July 15, 2020, execution "pending the completion of proceedings in the Seventh Circuit." *Id.* On July 4, 2020, the government petitioned for rehearing en banc to vacate the stay. Emergency Petition, *Purkey v. United States*, No. 19-3318 (7th Cir. July 4, 2020). On July 13, 2020, the Seventh Circuit panel denied the government's petition for rehearing. *Purkey v. United States*, __ Fed.Appx. __, No. 19-3318, 2020 WL 3958442 (7th Cir. July 13, 2020) On July 11, 2020, the government also filed an application in the Supreme Court to vacate the stay. Application, *United States v. Purkey*, No. 20A-4 (July 11, 2020). That application remains pending before the Supreme Court.

Also on November 20, 2019, the same day that this Court denied his § 2241 petition, a district court in the District of Columbia enjoined Purkey's execution on the basis of claims in the execution protocol litigation, but the D.C. Circuit subsequently vacated that injunction. *In re Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 113 (D.C. Cir. Apr. 7, 2020). The Supreme Court declined to stay the D.C. Circuit's mandate and denied certiorari. *Bourgeois v. Barr*, __ S. Ct. __, Nos. 19-1348, 19A1050 (June 29, 2020).

On November 26, 2019—just six days after this Court denied Purkey's § 2241 petition and the D.C. district court enjoined his execution in the protocol cases, Purkey filed a complaint in the D.C. district court raising the *Ford* claim that he omitted from his § 2241 petition in this Court and representing that his *Ford* claim was related to the protocol cases. Compl., *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. Nov. 26, 2019), ECF No. 1, ECF No. 3. He did not identify his § 2241 litigation in this Court as a related case. Notice, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. Nov. 26, 2019), ECF No. 3. On December 4, 2019, he moved for a preliminary injunction and expedited discovery. Motion, *Purkey v. Barr*, No. 19-cv-03570 (Dec. 4, 2019), ECF No. 7. The government opposed Purkey's motion on grounds that the district court lacked jurisdiction over

what was, in effect, another habeas petition. Opp., *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. Dec. 11, 2019), ECF No. 10. Shortly thereafter, Purkey sought and received leave to withdraw his motion. Motion, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. Dec. 17, 2019), ECF No. 11. On February 24, 2020, the government moved to dismiss Purkey's complaint for lack of jurisdiction and failure to state a plausible *Ford* claim. MTD, *Purkey v. Barr*, No. 19-cv-03570 (Feb. 24, 2020), ECF No. 18. The parties concluded briefing on that motion on March 30, 2020.

After the D.C. Circuit issued its mandate in the protocol cases, on June 15, 2020, the Attorney General scheduled Purkey's execution for July 15, 2020. A week later, Purkey renewed his motion for a preliminary injunction and expedited discovery. PI Motion, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. June 22, 2020), ECF No. 23; Discovery Motion, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. June 23, 2020), ECF No. 24. The parties concluded briefing on these motions on July 2, 2020.

On July 13, 2020, hours before the scheduled execution of one of Purkey's co-plaintiffs in the execution protocol litigation, the District of Columbia again enjoined the execution of Purkey and his co-plaintiffs. *In re Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, 2020 WL 3960928 (D.D.C. July 13, 2020). The Supreme Court subsequently vacated the district court's preliminary injunction, *Barr v. Lee*, __ S.Ct. __, No. 20A8, 2020 WL 3964985 (U.S. July 14, 2020). The Court reiterated that "'[l]ast-minute stays' like that issued this morning 'should be the extreme exception, not the norm.'" *Id.* at 3 (quoting *Bucklew v. Precythe,* 139 S. Ct. 1112, 1134 (2019)).

On July 14, 2020, Purkey's *Ford* counsel filed a motion to stay his execution in what was originally his pro se *Bivens* action to challenge his selection to be executed. *Purkey v. Barr*, No. 19-cv-517, ECF Nos. 80, 81. This Court denied the motion: "Purkey may not add a *Ford* claim

on this unrelated civil rights action. If he is directed to bring a *Ford* claim in a § 2241 petition in this Court, then he must file a *Ford* claim in a § 2241 petition in this Court. The instant motion must be brought in that action, when and if it is filed." Order, *Purkey v. Barr*, No. 19-cv-517, ECF No. 83.

Today, July 15, 2020, the district court for the District of Columbia entered two injunctions: one in the protocol cases and another in Purkey's *Ford* case. *Protocol Cases*, No. 19-mc-145, ECF Nos. 145, 146; *Purkey v. Barr*, 19-cv-3570, ECF No. 36. The government sought emergency relief in both cases from both the D.C. Circuit and the Supreme Court. The Supreme Court also vacated the Seventh Circuit's stay in Purkey's first § 2241 cases. *Barr v. Purkey*, No. 20A4 (U.S. July 15, 2020).

Minutes later, Purkey filed a second § 2241 petition in this Court, attempting to raise for the first time the *Ford* claim he previously omitted.

## ARGUMENT

In considering a motion for a stay of execution, the Seventh Circuit evaluates "two critical factors": "(1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam) (citing *Hill v. McDonough*, 547 U.S. 573 (2006); *Nelson v. Campbell*, 541 U.S. 637 (2004)); *see also* Opp. at 26 (discussing factors including "whether the stay applicant has made a strong showing that he is likely to succeed on the merits" (quoting *Nken*, 556 U.S. at 434)); *Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019) (same). Purkey's claims are unavailing, and he delayed unnecessarily in bringing them. Given the heavy weight this Court affords those two factors, Purkey's motion must be denied.

## I. PURKEY IS UNLIKELY TO SUCCEED ON THE MERITS

The Supreme Court has repeatedly instructed that a prisoner seeking a stay of execution must show "a significant possibility of success on the merits." *Hill*, 547 U.S. at 584; *see Nelson*, 541 U.S. at 649. Indeed, it has summarily set aside lower-court orders that "enjoined [an] execution without finding that [the prisoner] has a significant possibility of success on the merits." *Dunn*, 138 S. Ct. at 369. The Seventh Circuit has long followed the same rule. *See Lee*, 2019 WL 6718924, at *1 ("Before receiving a stay, an applicant must make a 'strong showing' of probable success on the merits."); *Lambert*, 498 F.3d at 451; *Garza v. Lappin*, 253 F.3d 918, 920-21 (7th Cir. 2001) ("A stay of execution pending the resolution of a second or successive petition for habeas corpus should be granted only when there are 'substantial grounds upon which relief might be granted.'") (citation omitted); *Williams v. Chrans*, 50 F.3d 1358, 1361 (7th Cir. 1995) (denying motion for stay of execution because prisoner did not establish a probability of success of his petition for certiorari).

For two separate dispositive reasons—because Purkey has clearly abused the writ of habeas corpus in bringing these claims here at this very late hour and because his claims are meritless—he does not even begin to make the required showing here. Allowing such a legally baseless injunction to further delay respondent's lawful execution "would serve no meaningful purpose and would frustrate the [federal government's] legitimate interest in carrying out a sentence of death in a timely manner." *Baze v. Rees*, 553 U.S. 35, 61 (2008) (plurality opinion).

### A. Purkey's Newest § 2241 Filing Abuses the Writ

Purkey alleges that he is incompetent to be executed. Because he could have raised this claim in his previous § 2241 petition, did not, and instead spent almost a year testing the waters of a court that clearly lacked jurisdiction, his new and belated § 2241 is barred by the abuse-of-

the-writ doctrine. This Court should not reward Purkey for filing last-minute a claim he could and should have filed in this Court almost a year ago.

"[T]he abuse-of-the-writ doctrine bars a petitioner who previously sought habeas relief from raising new claims in a later petition if there was no good cause for omitting them from the first one." *Hurn v. Kallis*, 762 Fed.Appx. 332, 334 (7th Cir. 2019). "One frequently recognized indicator of abusiveness is whether the petitioner could have asserted his present claims in his prior petition." *Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004); *see Slack v. McDaniel*, 529 U.S. 473, 486 (2000); *McCleskey v. Zant*, 499 U.S. 467, 470 (1991). The abuse-of-the-writ doctrine applies to § 2241 petitions. *Esposito*, 392 F.3d at 550; *Zayas v. I.N.S.*, 311 F.3d 247, 257; *Hurn*, 762 Fed.Appx. at 334. "Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus." *McCleskey*, 499 U.S. at 496.

"The doctrines of procedural default and abuse of the writ implicate nearly identical concerns flowing from the significant costs of federal habeas review." *McCleskey*, 499 U.S. at 490-91. "To begin with, the writ strikes at finality. One of the law's very objects is the finality of its judgments." *Id.* at 491. It exacts further costs by placing a "heavy burden on scarce federal judicial resources, and threatens the capacity of the system to resolve primary disputes." *Id.* "Finally, habeas corpus review may give litigants incentives to withhold claims for manipulative purposes and may establish disincentives to present claims when evidence is fresh." *Id.* at 491-92. But that is not the end: "Far more severe are the disruptions when a claim is presented for the first time in a second or subsequent federal habeas petition." *Id.* at 492.

The government satisfies its initial burden to show abuse of the writ "if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *Id.* at 494. Then the burden shifts to Purkey

to show cause and prejudice for his default or that a fundamental miscarriage of justice will result from failure to entertain the claim. *Id.*

Purkey's belated attempt to raise a *Ford* claim in a new § 2241 petition abuses the writ. Only hours before his scheduled execution, Purkey has petitioned this Court under § 2241 to bar his execution because he is allegedly incompetent. But Purkey previously filed a § 2241 petition in this Court seeking relief on eight grounds, including that his death sentence violated *Atkins v. Virginia*, 536 U.S. 304 (2002). Petition, *Purkey v. United States*, No. 19-CV-00414 (S.D. Ind. Aug. 27, 2019), ECF No. 1. Though he included an *Atkins* claim challenging the imposition of his death sentence based on his alleged incompetence when he committed the offense, *see id*. at 192-200, he did not include a *Ford* claim challenging his present competence to be executed. Purkey could have brought his *Ford* claim in that § 2241 petition, as he acknowledges that a *Ford* claim may be brought in habeas and his counsel admitted his *Ford* claim was ripe when he litigated his § 2241 in the Southern District of Indiana—even seeking an ex parte order there for brain imaging to support it, *Purkey v. Barr*, No. 19-mc-145 (TSC) (D.D.C.), Ex. 20 to Woodman Decl. at 1, ECF No. 7-22; Compl. ¶ 6, ECF No. 1; Brf. at 7, ECF No. 14. Nothing prevented Purkey from bringing his current claim in his initial § 2241.

Purkey cannot demonstrate justifiable cause for his decision to file his *Ford* claim in a court without jurisdiction. Instead, the decision appears to be one taken for perceived litigation advantage. Six days after this Court denied his § 2241 petition with prejudice and a district court in the District of Columbia granted a preliminary injunction, Purkey decided to file his *Ford* claim as a novel civil rights action in the latter court. *See Purkey v. United States*, No. 19-cv-00414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019), *aff'd*, __ F.3d __, No. 19-3318, 2020 WL 3603779 (7th Cir. July 2, 2020); *In re Fed. Bureau of Prisons Execution Protocol Cases*, No. 19-

mc-145 (TSC), 2019 WL 6691814 (D.D.C. Nov. 20, 2019); *Purkey v. Barr*, No. 19-mc-145
(TSC), Compl. (Nov. 26, 2019). From its first filing in that case, the government repeatedly
warned Purkey that jurisdiction for a *Ford* claim lies only in this Court. *Purkey v. Barr*, No. 19-
mc-145 (TSC), Resp. to PI Mot. 9-10, ECF No. 10, Defendants' Brf. 4-5, ECF. No. 16, Mot. to
Dismiss 13-16, ECF No. 18, Resp. to Renewed PI Mot. 7-18, ECF No. 26. Yet until the day
before his execution, Purkey has persistently refused to bring his claim in the only Court with
jurisdiction. Purkey knew his claim was ripe at a time when his § 2241 was pending in this
Court, knew he could bring a *Ford* claim in habeas, and knew that the government contested
jurisdiction in the District of Columbia. He has no cause for his abuse of the writ. Further,
Purkey cannot demonstrate prejudice. As Defendants have repeatedly argued in the District of
Columbia and continue to argue below, Purkey has not stated a plausible *Ford* claim.

Purkey has sought transparently to delay his execution through strategic gamesmanship,
refusing to file this application for a writ of habeas corpus in the district of his confinement for
months despite the government's repeated assertions that his claims could only properly be
brought in such an action -- and then filing his application, and an accompanying 40-page
memorandum for a stay of execution, just hours before his execution was to occur (and minutes
after the Supreme Court vacated the prior stay of execution in this case).

This Court should not reward such gamesmanship. The Supreme Court has recognized
that there exists "'a strong equitable presumption against the grant of a stay where a claim could
have been brought at such a time as to allow consideration of the merits without requiring entry
of a stay.'" *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quoting *Nelson v. Campbell*, 541
U.S. 637, 650 (2004)). Rarely, if ever, has that presumption applied with more force than here.
Purkey himself has argued that he could have pursued both suits at the same time. See D. Ct.

Doc. 2, at 10 n.3 ("Courts can consider both actions at the same time.").  But he chose not to do so, hoping that by asserting those claims at the last minute he would delay the imposition of his sentence yet another time.

Because he refused to bring his *Ford* claim in the correct court as part of his first § 2241, Purkey's latest and belated attempt to raise the claim abuses the writ. This Court should not reward him for strategically delaying the resolution of his claim with a stay, particularly where it is evident that he is unlikely to succeed on the merits.

**B.      Purkey Failed to Demonstrate Likelihood of Success on the Merits of his *Ford* Claim**

A prisoner is incompetent to be executed only if he is unable to "reach a rational understanding of the reason for his execution." *Madison v. Alabama*, 139 S. Ct. 718, 723 (2019) (quotation marks omitted). And before he is entitled to a hearing on the issue of his competency, Purkey must first make a substantial threshold showing of incompetency. *See Panetti v. Quarterman*, 551 U.S. 930, 949 (2007); *Ford v. Wainwright*, 477 U.S. 399, 425-26 (1986) (Powell, J., concurring) ("The [Government] . . . may properly presume that [a prisoner] remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process.").

The only direct support for Purkey's incompetency claim is the report of Dr. Bhushan Agharkar, a psychiatrist who interviewed Purkey in November 2019. Compl. Ex. 1 at 2, ECF No. 1-1. Although Dr. Agharkar suggests that Purkey is incompetent to be executed, his report mistakenly conflates Purkey's understanding of the reason for his *execution*, which would be constitutionally disqualifying under *Ford*, with Purkey's understanding of the reason for *scheduling his execution date*, which is not.

Dr. Agharkar acknowledges that Purkey can articulate the reason for his execution. "When I was finally able to shift the topic to Mr. Purkey's execution, Mr. Purkey first stated that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11. But, "[a]s the visit continued, . . . Mr. Purkey began to talk about the 'real reason' he was going to be executed. He told me that he was actually being executed because he is filing lawsuits for other people's cases." Compl. Ex. 1 at 11-12. Dr. Agharkar writes that "[w]hen I inquired further, Mr. Purkey also told me that he was given a date for execution unfairly and for reverse discrimination. He told me that we didn't need to talk about this because I could just read his filings." Compl. Ex. 1 at 11. Dr. Agharkar concludes that "to a reasonable degree of medical certainty, at the time of the evaluation, Mr. Purkey lacked a rational understanding of the basis for his execution." Compl. Ex. 1 at 12.

By mentioning "his filings," Purkey was referring to a pro se civil rights action that he brought in the Southern District of Indiana in October 2019. *See* Compl. Ex. 15 at 994, ECF No. 1-18. Purkey's pro se complaint alleges that his constitutional rights were violated by "the defendants['] deliberate arbitrary selection of his execution date, which was substantially motivated by his protracted jailhouse lawyering." Compl. Ex. 15 at 994. He alleges that he was arbitrarily and discriminatorily selected for execution before other death row prisoners who exhausted their appellate rights before he did. Compl. Ex. 15 at 1001-02. His complaint, although legally deficient, is coherent and refutes his claim that he is incompetent. On July 2, 2020, Purkey filed a pro se motion for a preliminary injunction barring his execution, which further reflects his mental competency. *See* Motion, *Purkey v. Barr*, No. 19-cv-517 (S.D. Ind. July 2, 2020), ECF No. 52.

Purkey's alleged confusion about the reason for scheduling his execution date is constitutionally irrelevant. The Eighth Amendment does not prohibit executing a prisoner who lacks a rational understanding of the reason for scheduling his execution date. "[T]he sole inquiry for the court remains whether the prisoner can rationally understand the reasons for his *death sentence*." *Madison*, 139 S. Ct. at 728 (emphasis added). Even if Purkey misunderstands why the Government initially scheduled his execution to take place on December 13, 2019, he is still able to rationally understand (and indeed has reportedly said he accepts) that he will be executed for kidnapping, raping, and murdering Jennifer Long.

None of Purkey's other allegations indicate he is unable to rationally understand the reason for his execution. *First*, Purkey alleges that he has "a history of mental illness, trauma, and paranoid delusional thinking." Compl. ¶ 38. Even crediting the truth of these allegations, they do not establish that he is incapable of rationally understanding the reason for his execution. Indeed, Purkey was found competent to be tried despite those alleged illnesses. *Cf. Ford*, 477 U.S at 425-26 (Powell, J., concurring).

*Second*, Purkey alleges that he has dementia and was diagnosed with Alzheimer's disease. Compl. ¶¶ 86-98. However, while dementia "can cause such disorientation and cognitive decline as to prevent a person from sustaining a rational understanding of why the State wants to execute him," "dementia also has milder forms, which allow a person to preserve that understanding." *Madison*, 139 S. Ct. at 729. Dr. Jonathan DeRight, the neuropsychologist who diagnosed Purkey with Alzheimer's disease, does not opine that Purkey's condition has advanced such that he is unable to rationally understand the reason for his execution. Compl. Ex. 3 at 20-28, ECF No. 1-1.

*Third*, Purkey alleges that his "long-term inability to effectively communicate with counsel is evidence of his present incompetence." Compl. ¶ 103. But a prisoner's competency to be executed does not depend on his ability to assist his counsel. *See Walton v. Johnson*, 440 F.3d 160, 172 (4th Cir. 2006); *Coe v. Bell*, 209 F.3d 815, 826 (6th Cir. 2000); *see also Madison*, 139 S. Ct. at 731 ("The sole question on which . . . competency depends is whether [the prisoner] can reach a rational understanding of why the state wants to execute him." (quotation omitted)).

Contrary to Purkey's arguments, his own statements contained in documents attached to his complaint directly contradict his claim of incompetency. As previously discussed, Purkey told Dr. Agharkar "that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. Furthermore, on May 13, 2019, Purkey filed a handwritten pro se "Petition to Expedite Execution of Petitioner's Death Sentence Pursuant to 28 U.S.C. § 2241" in the Southern District of Indiana. Compl. Ex. 15 at 1029, ECF No. 1-18, writing that "[o]n January 23, 2004 U.S. District Judge Gaitan sentenced Purkey to death after a jury found him guilty of kidnapping resulting in death and recommended a sentence of death . . . ." Compl. Ex. 15 at 1029-30. These statements demonstrate Purkey's understanding he was sentenced to death for his crime and possesses a rational understanding of the reason for his execution.

## C. Purkey Failed to Demonstrate Likelihood of Success on the Merits of his Due Process Claim

For similar reasons, Purkey did not demonstrate a likelihood of success on his Fifth Amendment due process claim because he is not entitled to any particular process unless and until he makes a substantial threshold showing of incompetency. *Ford* and *Panetti* are clear: No process—including information sharing or discovery—is required until the prisoner has made the substantial threshold showing. *See Panetti*, 551 U.S. at 950 ("Petitioner was entitled to these

protections *once he had made a substantial threshold showing of insanity*.") (quotation omitted; emphasis added). Purkey recognizes as much. See D. Ct. Doc. 1, at 55 (complaint) ("*Because Mr. Purkey has made a substantial showing of his incompetence to be executed, he is entitled to a hearing under Due Process and the Eighth Amendment*.") (emphasis added); D. Ct. Doc. 23-1, at 25 (June 22, 2020) (motion for a preliminary injunction) ("In a *Ford* inquiry, a prisoner *who makes a sufficient threshold showing of incompetency* is entitled to the protection afforded by procedural due process.") (internal quotation marks omitted; emphasis added). Purkey's due process claim thus rises and falls with his *Ford* claim. Because Purkey has not made a substantial showing of incompetency, he likewise has not demonstrated any denial of his right to procedural due process.

Furthermore, contrary to Purkey's argument that there is no "federal process at all to allow for the adequate review of Mr. Purkey's *Ford* competency claim," Motion at 25, ECF No. 23-1, the appropriate and available process for adjudicating Purkey's *Ford* claim is a habeas petition under § 2241. If Purkey had filed his *Ford* claim under § 2241, and made a substantial threshold showing of incompetency, he would have available all the due process mandated by *Panetti*, and the additional process potentially available in habeas proceedings. *See* Rules 1(b), 2, 6, and 8 of the Rules Governing Section 2254 Cases in the United States District Courts.

Purkey cannot establish a violation of his due process rights where he never made the threshold showing required to receive process. Accordingly, he has failed to demonstrate that he is likely to succeed on his due process claim.

### D. Purkey's Complaints About Lack of Discovery and Medical Testing Are Irrelevant and Meritless

Purkey's accusations that Respondents somehow improperly withheld documents or impeded testing that could support his *Ford* claim are irrelevant and meritless. As an initial

matter, Respondents were under no obligation to provide documents or arrange for testing. *Ford* and *Panetti* are clear: No process—including information sharing or discovery—is required until the prisoner has made the substantial threshold showing of incompetence. *See Panetti*, 551 U.S. at 950 ("Petitioner was entitled to these protections *once he had made a substantial threshold showing of insanity*.") (internal quotation marks omitted; emphasis added). As discussed above, Purkey has not made this showing.

Purkey's pursuit of medical records has been far short of diligent. He first sought expedited discovery in his initial preliminary injunction motion in the District of Columbia on December 4, 2019. Memorandum in Support at 22-23, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. Dec. 4, 2019), ECF No. 7-1. However, he moved to withdraw his preliminary injunction motion two weeks later. Motion to Withdraw, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. Dec. 17, 2019), ECF No. 11. He did not move again for expedited discovery until June 23, 2020, and the District of Columbia has not ruled on that motion. Motion for Expedited Discovery, *Purkey v. Barr*, No. 19-cv-03570 (D.D.C. June 23, 2020), ECF No. 24. While Purkey has also sought medical records under the Freedom of Information Act, he never brought a lawsuit under the FOIA statute for alleged failure to produce documents. *See generally* 5 U.S.C. § 552(a)(4)(B).

Moreover, the reality is that Purkey already has his medical records. He personally requested and received copies of his own medical records both this year and last. As reflected in the attached declaration of Rae Milburn and accompanying exhibits, on March 27, 2020, at Purkey's request, he was provided with copies of his medical records dating back to the first of the year.  Milburn Decl. ¶ 3 and Ex. 1. On September 30, 2019, at Purkey's request, he was provided with copies of his medical records from January 1, 2017 to September 26, 2019.

Milburn Decl. ¶ 4 and Ex. 2. In short, Purkey knows how to obtain his own medical records, and he has received them.

Purkey's complaints about being deprived access to medical testing are equally meritless. On September 16, 2019, Purkey's counsel requested neurological imaging. Sievereld Decl. ¶ 3 and Ex. A. BOP counsel responded that any medical or psychological testing not necessary for an inmate's daily care would require a court order. Sievereld Decl. ¶ 3 and Ex. A. Purkey sought ex parte a court order in the Southern District of Indiana, but his request was denied. Woodman Decl. ¶ 12, *Purkey v. Barr*, No. 19-3570 (D.D.C. Dec. 4, 2019), ECF No. 7-2.

On June 15, 2020, Purkey's counsel requested neuroimaging and blood laboratory tests. Sievereld Decl. ¶ 7 and Ex. 5. On June 23, 2020, BOP counsel advised that BOP was working on scheduling Purkey for medical tests. Sievereld Decl. ¶ 7 and Ex. 5. Purkey's counsel proceeded to demand details about the testing, including the hospital's location and transportation logistics, and also refused to accept the BOP's position that it would not pay for the testing. Sievereld Decl. ¶ 8 and Ex. E. BOP counsel responded that BOP could not provide specific logistical details for security reasons and that BOP does not pay for tests that are not clinically indicated, and Purkey's records did not reveal any clinical indication for the requested tests. Sievereld Decl. ¶ 8 and Ex. E. Despite being informed that BOP would schedule the tests and could not provide logistical details due to security concerns, Purkey's counsel attempted to schedule the testing herself. Sievereld Decl. ¶ 9 and Ex. F. That effort created confusion and scheduling difficulties for BOP staff handling Purkey's counsel's request. Sievereld Decl. ¶ 9.

The medical testing was conducted at Indiana University Medical Center, Wilson Decl. ¶ 7, and BOP counsel promptly provided the testing reports to Purkey's counsel via email on July 8 and 13, 2020. Sievereld Decl. ¶ 10 and Exs. H and I. On Friday, July 10, BOP counsel

placed a disc containing the actual medical scans and images in the designated FedEx pickup location at the FCI Terre Haute front entrance and was assured by an officer that the FedEx pickup had not occurred and that the envelope was in the correct place. Sievereld Decl. ¶ 12. On Saturday, July 11, Purkey's counsel notified BOP counsel that the envelope had not yet arrived, and BOP counsel subsequently learned that after delivering the envelope to the designated pickup location, all deliveries to FCI Terre Haute had stopped, and FedEx had not collected it. Sievereld Decl. ¶ 13. BOP personnel delivered the envelope to a FedEx location on Monday morning, July 13, and it was delivered to Purkey's expert on July 14, at 11:26 am. Sievereld Decl. ¶ 14 and Ex. J.

In short, the medical testing Purkey requested was performed, and he has received both the testing reports and the actual medical scans and images.

### E.     The Results of the Medical Testing Do Not Support Purkey's *Ford* Claim

Significantly, the results of the testing lend no support to Purkey's claim of incompetency, as explained in the Declaration of Dr. William Wilson. Dr. Wilson is a medical doctor who serves as the Clinical Director at FCC Terre Haute. Wilson Decl. ¶¶ 1-2. Dr. Wilson oversees the medical staff and has personally provided medical care to Purkey. Wilson Decl. ¶¶ 2-3. Throughout Dr. Wilson's treatment and interactions with Purkey, he has perceived no clinical indications of dementia or Alzheimer's disease. Wilson Decl. ¶ 5. Purkey "communicates well and coherently." Wilson Decl. ¶ 5. Upon the request of Purkey's counsel, Dr. Wilson ordered a metabolic PET brain imaging study, an MRI of the brain, as well as an electroencephalogram (EEG). Wilson Decl. ¶ 6.

It is Dr. Wilson's practice to review the reports when inmates under his care receive outside medical testing. Wilson Decl. ¶ 10. Consistent with this practice, Dr. Wilson reviewed the reports from Purkey's testing. Wilson Decl. ¶ 10. The results of the PET scan were read "as

normal with no findings to suggest Alzheimer's disease." Wilson Decl. ¶ 7. The results of the

MRI were read to show "no evidence of acute intracranial hemorrhage, mass effect, or infarct.

This finding indicates there was no evidence of infarcts which would suggest multi-infarct

dementia. The MRI report showed some mild volume loss which can be associated with the

natural aging process, as well as a suggestion of possible chronic small vessel ischemic disease

which also is not uncommon to see in geriatric patients." Wilson Decl. ¶ 8. The results of the

EEG were interpreted as normal. Wilson Decl. ¶ 9.

Dr. Wilson found the test results to be "consistent with [his] previous clinical treatment

plan, i.e., no behavior or clinical indications of dementia or Alzheimer's disease are present

concerning [Purkey]." Wilson Decl. ¶ 10.

## II.    PURKEY UNREASONABLY DELAYED IN BRINGING THIS PETITION

Beyond the threshold failure to show a substantial likelihood of success, a stay is

unwarranted for the separate reason that Purkey unnecessarily delayed in bringing the present

claims. Courts "must . . . apply a strong equitable presumption against the grant of a stay where a

claim could have been brought at such a time as to allow consideration of the merits without

requiring entry of a stay." *Hill*, 547 U.S. at 584 (quotation omitted). "[S]omeone who waits years

before seeking a writ of habeas corpus cannot, by the very act of delay, justify postponement of

the execution." *Lee*, 2019 WL 6718924, at *2 (citing *Nelson*, 541 U.S. at 649-50).

As explained above, Purkey made the strategic decision to forgo the proper court to bring

is *Ford* claim in the jurisdiction of his wishes. He knew the claim was ripe as of last July, he

knew it sounded in habeas, and he knew this Court could hear it. Bringing it on the day of his

execution is exactly the type of dilatory tactic that makes "[l]ast minute stays . . . the exception

not the norm." *Bucklew*, 587 U.S. at __; *see also Barr v. Lee*, No. 20A8, 591 U.S. ___, *Barr v.*

*Lee*, 2020 WL 3964985, slip op. 3 (U.S. July 14, 2020) (vacating stay issued day before "so that the question of capital punishment can remain with the people and their representatives to resolve" (quotation omitted)). In fact, Purkey admits in his brief that he could have brought both claims simultaneously, Brf. at 10 n.3, so he could have brought this claim much earlier.

## III.     The Balance of Equities Favors Denying the Injunction

Even apart from the merits and his unnecessary delay, Purkey's motion for an injunction should be denied because the additional required considerations—likelihood of irreparable harm, the public interest, and the balance of equities—all weigh heavily against further injunctive relief. *Glossip*, 135 S. Ct. at 2736; *cf. Winter*, 555 U.S. at 26.

The public interest weighs heavily against an injunction. The Supreme Court has repeatedly emphasized that the public has "powerful and legitimate interest in punishing the guilty," *Calderon*, 523 U.S. at 556 (citation omitted), and that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew*, 139 S. Ct. at 1133 (quotation marks omitted). A last-minute injunction entered in this case cuts against the public interest in timely enforcement of a death sentence, as well as the Supreme Court's admonition that "[l]ast-minute stays should be the extreme exception, not the norm." *Id*.

Moreover, "the balance of equities" likewise weigh "strongly in favor of the" government and therefore against the injunction. *Winter*, 555 U.S. at 26. Purkey's delayed action in the wrong judicial district indicates a litigation strategy "with the obvious and intended effect of delaying [his execution] indefinitely." *Execution Protocol Cases*, 955 F.3d at 127 (Katsas, J., concurring); *cf. Ford*, 477 U.S at 426 (Powell, J., concurring) (explaining that, because a prisoner "must have been judged competent to stand trial," the government "may properly

presume that [a prisoner] remains sane at the time sentence is to be carried out" absent a substantial showing of incompetency).

The "balance" of the "'stay equities'" strongly favors denying an injunction. *Mt. Soledad*, 548 U.S. at 1302 (Kennedy, J., in chambers) (citation omitted). In addition to the factors already discussed, an injunction would cause "severe prejudice" to the government, which is fully prepared to implement the sentences imposed many years ago in Purkey's case at 4 p.m. today. *Blodgett*, 502 U.S. at 239. "To unsettle these expectations" in the final hours before the executions—particularly after a lengthy delay arising from yet another meritless injunction— would be "to inflict a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the [government] and the victims of crime alike." *Calderon*, 523 U.S. at 556 (citation omitted).

More practically, the last-minute injunction is intensely disruptive to BOP's preparations for the execution, which have now entered their final stages, including picking up grieving family members of the victims and other witnesses and preparing to transport them to the execution facility, conducting final rehearsals with contractors and execution-team personnel, and increasing security and other precautions in and around the execution facility. See Execution Protocol Cases D. Ct. Doc. 139-1 ¶¶ 4-12.

Unlike some state executions, federal executions cannot be rescheduled with relative ease, for example on dates next week. As BOP has explained in a declaration, the contractors assisting in the executions this week would likely need "at least one month's notice in order to be able to reschedule." Execution Protocol Cases D. Ct. Doc. 139-1 ¶ 6. Thus, while it is possible for BOP to conduct Purkey's execution later today or possibly tomorrow if absolutely necessary

to facilitate this Court's consideration of the application, the government cannot postpone the execution any further than that without requiring a much more significant delay.

## IV.     Purkey is Equally Not Entitled to a Stay under *Lonchar*

Purkey is not entitled to a stay under *Lonchar v. Thomas*, 517 U.S. 314 (1996). The Supreme Court held in *Lonchar* that "when a district court is faced with a request for a stay in a first federal habeas case," "[i]f the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot." *Id*. at 320 (emphasis added).

*Lonchar* is inapplicable here because this is not Purkey's "first federal habeas case." It is his third. He previously pursued relief under 28 U.S.C. § 2255 in the Western District of Missouri and in the Eighth Circuit, and just last year he brought a habeas petition under § 2241 in this district.

The fact that Purkey's *Ford* claim is not a "second or successive" habeas claim under § 2244(b)(2), *see Panetti v. Quarterman*, 551 U.S. 930, 945 (2007), does not make it a "first federal habeas case" under *Lonchar*. *Panetti* explained that the phrase "second or successive" in § 2244(b)(2) does not necessarily refer to all habeas "applications filed second or successively in time." *Id*. at 943-44. By contrast, *Lonchar* applies only to the "first federal habeas case," and there is no reason to believe "first" means anything but "first." As the Sixth Circuit explained, "[t]hat a *Ford* claim is not treated as a successive petition does not automatically entitle [the petitioner] to a stay. In arguing to the contrary, [the petitioner] invokes [*Lonchar*], but that decision involved a general claim for first habeas relief, which this claim assuredly is not." *Bedford v. Bobby*, 645 F.3d 372, 377 (6th Cir. 2011) (per curaim); *see also Clayton v. Luebbers*,

780 F.3d 903, 904 (8th Cir. 2015) (per curiam) (applying the stay standard from *Nelson* and *Hill* to a motion for a stay of execution based on a *Ford* claim).

Purkey has identified no authority to the contrary. He cites only two decisions that applied *Lonchar* to stay an execution based on a *Ford* claim. One was vacated on appeal, *see Bedford v. Bobby*, No. 11-cv-311, 2011 WL 1843281 (S.D. Ohio May 16, 2011), *vacated*, 645 F.3d 372 (6th Cir. 2011), and the second predated *Panetti* and involved a *Ford* claim raised in the initial habeas petition, *see Amaya-Ruiz v. Stewart*, 136 F.Supp.2d 1014, 1020 (D. Ariz. 2001). Neither case supports Purkey's position that under *Panetti* every *Ford* claim is a "first federal habeas claim" under *Lonchar*.

In fact, treating every *Ford* claim as a "first habeas petition" under *Lonchar* would run directly contrary to *Panetti*, which recognized that "last-minute filings [of *Ford* claims] that are frivolous and designed to delay executions can be dismissed in the regular course. The requirement of a threshold preliminary showing, for instance, will, as a general matter, be imposed before a stay is granted or the action is allowed to proceed." 551 U.S. at 946-47. In other words, habeas petitioners raising *Ford* claims must satisfy the normal requirements for a stay before they are entitled to one.

Furthermore, the reasoning behind the rule in *Lonchar* has no applicability here. The Supreme Court explained that "[d]ismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar*, 517 U.S. at 324. This concern is not remotely implicated in this case. Purkey made the strategic decision not to pursue his *Ford* claim in his prior § 2241 petition in this district. He said explicitly in an ex parte filing in his prior § 2241 proceeding that "the question of whether Mr. Purkey is competent to be executed"

was "an issue that is ripe in his case." Ex. 20 to Woodman Decl. at 1, Purkey v. Barr, No. 19-cv-03570 (D.D.C. Dec. 4, 2019), ECF No. 7-22.[1] In the prior § 2241 proceeding, Purkey requested a court order for brain imaging tests so that he could support a *Ford* claim. *See id.*[2] In the *Ford* litigation in the District of Columbia, Purkey stated that "[t]he case law is clear that a *Ford* claim may be brought pursuant to a habeas petition." Purkey Brief at 7, No. 19-cv-03570 (D.D.C. Jan 14, 2020), ECF No. 14.

In other words, Purkey knew he could have brought his *Ford* claim in his prior § 2241 proceeding, and he believed that the claim was ripe while his § 2241 petition was pending. However, he made the strategic decision to bring his *Ford* claim in the District of Columbia and to spend the last seven-and-a-half months defending his decision to bring it there, while from the very outset of the case the government informed him that it was an improper forum. Purkey cannot now plausibly assert that he is entitled to a stay because this is his "first federal habeas case." The very fact he is making such an argument underscores that what he really seeks here is not the opportunity to assert a timely Ford claim but rather just another avenue to further delay his lawfully imposed sentence.

## CONCLUSION

For the reasons stated above, this Court should deny Purkey's motion to stay his execution.

Respectfully submitted,

---

[1] The government was not aware of this ex parte request until Purkey filed it as an exhibit to a declaration in the *Ford* proceeding in the District of Columbia.

[2] Purkey has stated that the Southern District of Indiana denied his request for brain imaging. Woodman Decl. ¶ 12, *Purkey v. Barr*, No. 19-cv-03570 (D. D.C. Dec. 4, 2019), ECF No. 7-2.

JOSH J. MINKLER
United States Attorney


By:     _s/ Shelese Woods_____
        Shelese Woods
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2020, the foregoing was filed electronically through

ECF/CM. On this same date, electronic service will be made to all counsel of record through the

Court's ECF/CM system.

s/ *Shelese Woods*
Shelese Woods
Assistant United States Attorney

Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333
(317) 226-6125 [Fax]