# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | |
|---|---|
| WESLEY I. PURKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00517-JMS-DLP |
| | ) |
| WILLIAM BARR, et al, | ) |
| | ) |
| Defendants. | ) |

## Declaration of Katherine Siereveld

I, Katherine Siereveld, declare the following:

1.     I am a senior attorney employed with the Federal Bureau of Prisons (BOP) at USP Terre Haute.

2.     Attached to this declaration as Exhibits A through I are true and correct copies of email correspondence between me and Wesley Purkey's attorneys, Rebecca Woodman and Michelle Law.[1]   Exhibit J contains a true and correct copy of the FedEx Shipment Tracking for package #857436188324.

3.     On September 26, 2019, counsel requested neurological imaging of Mr. Purkey's brain in a hospital setting to assess a progressive-dementia diagnosis.   Ex. A, at 1.   I advised counsel that "any medical or psychological testing which is outside of that necessary to the inmate's daily care requires a court order."   *Ibid.*   I further advised counsel that BOP would arrange such testing "in a fairly timely matter," but that BOP would not pay the costs of the inmate's testing, transportation, or security.   *Ibid.*

---

[1] There is some repetition and overlap due to some of the email chains breaking off on different issues.

4.      On October 4, 2019, defense counsel informed me that she had obtained a medical order for an MRI, a PET scan, and a DTI (diffusion tensor imaging) scan of Mr. Purkey. Ex. B, at 4.   On October 8, I sought further details regarding these procedures.   *Id.* at 3.   The following day, counsel provided a copy of the medical order for Mr. Purkey.   *Id.* at 2.   I solicited cost estimates from BOP's medical vendors, and on October 16, transmitted this information to counsel and sought additional information (on the vendors' behalf) regarding the procedures.   *Id.* at 1-2.   Counsel responded that she would "start the process of procuring funding."   *Id.* at 1.

5.      On February 27, 2020, counsel contacted me and a counselor in the Special Confinement Unit (where Mr. Purkey is housed) seeking to schedule a second psychological evaluation on March 31.   Ex. C, at 1.   BOP had authorized a previous evaluation without a court order as part of Mr. Purkey's clemency application.   At the time of this request, however, Mr. Purkey had initiated litigation challenging his mental status.   The BOP counselor responded the same day, asking counsel to provide a court order.   *Ibid.*

6.      On March 18, 2020, counsel informed me that she had cancelled the psychological evaluation "due to the COVID-19 issue and due to an unresolved issue regarding the need for a court order."   Ex. D, at 1.   Counsel wanted to reschedule the evaluation for May 12, and asked if a court order would be required.   *Ibid.*   I informed counsel that I would consult my supervisors regarding the need for a court order.   *Ibid.*

7.      On June 15, 2020, counsel sought arrangements for an in-person evaluation of Purkey by a neuropsychologist.   Counsel further requested new neuroimaging and blood laboratory results.   Ex. E, at 7-8.   On June 23, I inquired if counsel had made the necessary arrangements for the neuropsychologist to visit the prison.   *Id.* at 7.   I further informed counsel

-2-

that BOP staff was working on scheduling Mr. Purkey for medical tests. *Ibid.* On June 24, counsel replied that she was waiting for "BOP written safety plan/protocol/policy relating to COVID-19 in order to determine if and when it is safe to schedule an expert visit." *Id.* at 6. Counsel also sought clarification on whether BOP needed a court order. *Ibid.* Finally, counsel listed the following tests that the defense required for Mr. Purkey: an MRI, two types of PET tests, an EEG (electroencephalogram), a variety of blood tests, a lumbar puncture and cerebrospinal fluid assay, and a DTI scan. *Id.* at 6-7. I replied that visiting procedures were posted on BOP's website, and that BOP would make an exception and permit testing without a court order given "the urgency of the time frame." *Id.* at 6. I informed counsel that outside medical personnel would perform the tests (with the possible exception of blood tests). *Ibid.* Finally, I reminded counsel that BOP would not pay for the tests, and requested additional information so I could obtain updated cost estimates for new medical tests that counsel had just identified. *Id.* at 5.

8. On June 25, 2020, counsel responded as follows:

- Counsel stated that BOP's plan for visitation during the COVID-19 lockdown "remains insufficient to address our concerns." Ex. E, at 4. Counsel requested extensive information about COVID-19 testing at Mr. Purkey's facility, including "the numbers of tests administered, the number of pending test results, and the numbers of positive and negative results." *Ibid.* Counsel also sought information about sanitation procedures. *Ibid.*

- Counsel requested "the precise logistics of accomplishing the testing in the short time period available," such as the hospital's location, the nature of its equipment and personnel, and transportation logistics. *Ibid.*

- Counsel "[was] not prepared to accept [BOP's] denial of responsibility for the costs of testing." *Id.* at 5.

On June 26, I responded with information about the BOP's COVID-19 statistics and sanitation procedures. *Id.* at 2-3. I informed counsel that BOP could not provide specific details about testing for security reasons, but that counsel would—in addition to the test results—receive the names of the facility and medical personnel involved. *Id.* at 3. Finally, I informed counsel that BOP does not pay for medical tests that "are not clinically indicated," and that BOP medical and psychology staff had determined that "Mr. Purkey's records reveals no clinical indication for the testing you are requesting." *Ibid.*

9. Despite my advisement that BOP would schedule the tests and decline to provide advance notice regarding their time or place due to security concerns, counsel attempted to schedule the testing. Ex. F, at 2-3. That effort created confusion and scheduling difficulties for BOP staff handling counsel's request. On July 4, 2020, I informed counsel that "outside entities are unable to schedule testing for inmates" and that BOP had scheduled Mr. Purkey's medical tests at an in-network hospital the following week. *Id.* at 2. I further informed counsel that I had "provided Mr. Purkey's entire medical and psychological files to the [Assistant U.S. Attorneys] involved in his case." *Ibid.*

10. Medical personnel completed all the tests requested by counsel.[2] Ex I, at 5-6. When prisoners undergo such testing, the providers transmit the reports and any associated images to BOP. BOP received the testing reports for Mr. Purkey, which I promptly transmitted to counsel by email. *See, e.g.,* Ex. H, at 1 (PET scan); Ex. I, at 4-5 (MRI).

---

[2] At the medical facility's request, BOP informed counsel that a less-invasive blood test would provide the same information as the lumbar-puncture procedure. Counsel elected to proceed with the blood test. Ex I, at 5-6.

-4-

11.     On July 9, 2020, counsel requested that BOP provide the actual medical scans and images so that their expert could review them.  Ex. I, at 4.  I informed counsel that the hospital had placed these materials on a disc and asked how counsel wished to receive them.  *Id.* at 3. That same day, counsel asked me to send the disc, by overnight mail, to the defense expert in Chevy Chase, Maryland.  *Ibid.*

12.     On Friday, July 10, 2020, at 2:30 pm, I received—by hand delivery—the disc containing the medical scans and images.  I placed the media into a FedEx envelope marked for Saturday delivery and bearing tracking number 857436188324.  I provided this information to counsel.  Ex. I, at 3.  At approximately 3:15 p.m., I hand-delivered the FedEx envelope to the designated pickup location at the FCI Terre Haute front entrance.  I received assurances from the officer at entrance that the scheduled FedEx pickup had not occurred and that the envelope was in the correct place.

13.     On Saturday, July 11, 2020, counsel informed me that their expert had not received the FedEx envelope and that the tracking number had yielded a "not found" message. Ex. I, at 2.  I responded the same day, stating that I would investigate the package's location. *Ibid.*  On Sunday, July 12, counsel again informed me that the package had not arrived.  *Id.* at 1.  I reported to counsel what I had learned: after I delivered the envelope to the designated pick-up location, all deliveries to FCI Terre Haute had stopped, and FedEx had not collected the envelope.  *Ibid.*

14.     BOP personnel delivered the envelope to a FedEx location the following morning—Monday, July 13, 2020.  The package was delivered on July 14, 2020 at 11:26 a.m. Ex. J.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___7/15/2020___                        _____
                                                   Katherine Siereveld

## Katherine Siereveld - Re: Medical Questions regarding Wesley Purkey

| | |
|---|---|
| **From:** | Katherine Siereveld |
| **To:** | Michelle Law |
| **Date:** | 9/26/2019 11:10 AM |
| **Subject:** | Re: Medical Questions regarding Wesley Purkey |
| **CC:** | rewlaw_outlook.com |

Hi Michelle,

As you are aware, any medical or psychological testing which is outside of that necessary to the inmate's daily care requires a court order. In previous cases, we have been able to obtain PET scans, CT scans and MRIs for inmates in a fairly timely manner as not all of this testing has to happen at a hospital. Some can be done here by our contractors, it just depends on what tests are requested. Additionally, since the requested testing is outside of testing which is necessary to the ordinary care of the inmate and is for outside litigation/clemency purposes, the BOP does not bear the cost of that testing to include any costs incurred by transporting an inmate to an outside facility and the necessary security staff for such a trip. I left you a message yesterday regarding your request for video footage and have not heard back. If you could give me a call we can discuss both issues. I can be reached at 812-238-3476.

Thanks,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Michelle Law <Michelle_Law@fd.org> 9/26/2019 11:01 AM >>>
Katherine:

Mr. Purkey requires neurology imaging of his brain in order to determine his current neurological functioning in light of a progressive dementia diagnosis and recommendations therefrom. This testing must be performed in a hospital setting. Mr. Purkey must be transported to a hospital facility for testing, and we are looking at hospitals near Terre Haute as a testing location. Given the pending execution date, we hope to have arrangements made soon. Will a doctor's order for the procedure, along with an appointment date be sufficient for Mr. Purkey's transport? How much lead time will the prison need in order to make arrangements for Mr. Purkey's transport to a hospital facility?

Thanks-

Michelle



## Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

**Katherine Siereveld - RE: Medical Imaging Tests for Wesley Purkey**

| | |
|---|---|
| **From:** | Michelle Law <Michelle_Law@fd.org> |
| **To:** | Katherine Siereveld <ksiereveld@bop.gov> |
| **Date:** | 10/21/2019 8:59 AM |
| **Subject:** | RE: Medical Imaging Tests for Wesley Purkey |
| **CC:** | "rewlaw_outlook.com" <rewlaw@outlook.com> |

Thanks, Katherine – I'll start the process of procuring funding.  I am certain that we will want a true DTI image so let me know what the outside vendors report about costs.



**Michelle M. Law**

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Sent:** Wednesday, October 16, 2019 9:59 AM
**To:** Michelle Law <Michelle_Law@fd.org>
**Cc:** rewlaw_outlook.com <rewlaw@outlook.com>
**Subject:** RE: Medical Imaging Tests for Wesley Purkey

**Please see below for the estimates I have received so far for the outside testing.**

PET Scan of the brain – CPTs 78608 and 70450 is about $2500
MRI of the brain with and without contrast – CPT 70553 is about $800.

MRI DT can most likely be done with the regular MRI but it may have to go out of network depending on availability of the testing/reading. Two other hospitals both say they can do it. I am checking to see if the onsite vendor can do it as well.  I would add another $250 to the regular MRI to cover that cost just to be on the safe

side.

**The response from the onsite vendor is in red below.  Please let me know how you want us to proceed...**

The answer is yes and no.
We can provide Diffusion-weighted Imaging which is a part of diffusion tensor imaging .

From what I was told is that DTI is used a lot in Brain accident injury application. DWI provides the raw data for the DTI.

Bottom line we can do DWI. Let me suggest this. Let's do a DWI and submit it to the Radiologist and see if he can interpret a DTI from the data.

>>> Michelle Law <Michelle_Law@fd.org> 10/9/2019 11:26 AM >>>
Katherine:
I've attached our doctor's order for the imaging – this is all the information I have regarding the details of the tests.  It is my understanding that all imaging is of the head and no other part of the body.
Once you learn more about who will be performing the tests, would you please forward that information to me along with more information regarding the machines that will be used to perform the tests (manufacturer, model number, etc.).  If you will not be able to obtain this information, would you forward the name of a contact person so we can obtain all relevant information regarding the performance of the tests and the qualifications of those administering the tests?  Also, we will need to know how to go about paying for the tests – like a vendor number, etc.
Thanks-
Michelle



## Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

**From:** Katherine Siereveld <ksiereveld@bop.gov>

**Sent:** Tuesday, October 8, 2019 1:28 PM
**To:** Michelle Law <Michelle_Law@fd.org>
**Subject:** RE: Medical Imaging Tests for Wesley Purkey

Hi Michelle,
They need a little more information...

The providers for the DT MRI need more specific orders to have a good understanding of what they are looking for.  They gave the example of stroke vs. MS.

Also, do you want the MRI with or without contrast?

One more, is the PET scan of the whole body?  What are the parameters for that?

Thanks!
Katherine


>>> Michelle Law <Michelle_Law@fd.org> 10/4/2019 2:26 PM >>>
It stands for diffusion tensor imaging and it is a study to evaluate brain fiber tract abnormalities.



**Michelle M. Law**

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Sent:** Friday, October 4, 2019 1:20 PM
**To:** Michelle Law <Michelle_Law@fd.org>
**Cc:** rewlaw_outlook.com <rewlaw@outlook.com>
**Subject:** Re: Medical Imaging Tests for Wesley Purkey

Really quick dumb question…what is DTI??  I have not been asked for that one before.

>>> Michelle Law <Michelle_Law@fd.org> 10/4/2019 2:18 PM >>>
Katherine:

We have a medical order for the following imaging tests for Mr. Purkey:  1)  An MRI of Mr. Purkey's head; 2) a PET scan of his brain; and 3) a DTI scan of his brain.  Pursuant to our earlier conversation, if you will let me know the medical costs associated with these examinations, and some detail regarding how they will be carried out, we will then move forward with plans to get a court order and to arrange for payment of medical expenses.  I am happy to assist in any way that I can – if you need more info from me, please let me know.

Thanks-

Michelle



### Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

## Katherine Siereveld - Re: Dr. Agharkar visit with Wes Purkey

| | |
|---|---|
| **From:** | Andrew Sutton |
| **To:** | Law, Michelle;  Siereveld, Katherine |
| **Date:** | 3/3/2020 6:57 AM |
| **Subject:** | Re: Dr. Agharkar visit with Wes Purkey |
| **CC:** | Cleary, Kathleen;  Vartkessian, Elizabeth;  rewlaw_outlook.com |

Awaiting response...

A. Sutton
Special Confinement Unit
Correctional Counselor
FCC Terre Haute
812-244-4400
asutton@bop.gov

I have no way of knowing the number of things that I said I would never forget, but have already forgotten.

"This message is intended for official use and may contain SENSITIVE information.  If this message contains SENSITIVE information, it should be properly delivered, labeled, stored, and disposed of according to policy."


>>> Andrew Sutton 2/27/2020 12:26 PM >>>
Do you have a court order for an evaluation?

A. Sutton
Special Confinement Unit
Correctional Counselor
FCC Terre Haute
812-244-4400
asutton@bop.gov

I have no way of knowing the number of things that I said I would never forget, but have already forgotten.

"This message is intended for official use and may contain SENSITIVE information.  If this message contains SENSITIVE information, it should be properly delivered, labeled, stored, and disposed of according to policy."


>>> Michelle Law <Michelle_Law@fd.org> 2/27/2020 8:13 AM >>>
Katherine and Counselor Sutton:

Is March 31, 2020 available for Dr. Agharkar to visit Mr. Purkey?  He would like to visit with Mr. Purkey from 11:30 a.m. – 2:30 p.m., and would require the same items as before -- his brief case, written materials, and pens/pencils.  I will double check with him about a laptop, but I do not think he brought a laptop the last time he visited Wes.  Please let me know soon as Dr. Agharkar is holding open March 31, and would otherwise schedule patient visits on that day.

Please let me know if you have questions for me.

Thanks-

Michelle



## Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

## Katherine Siereveld - Re: Rescheduling Dr. Agharkar's Visit with Mr Purkey

**From:**    Michelle Law <Michelle_Law@fd.org>
**To:**       Katherine Siereveld <ksiereveld@bop.gov>
**Date:**    3/18/2020 8:16 PM
**Subject:** Re: Rescheduling Dr. Agharkar's Visit with Mr Purkey

Thanks, Katherine.  The only thing I meant about the COVID-19 comment was that I understand the future is a bit unknown when it comes to visits given the current environment.  Thanks for checking on the court order issue - much appreciated.

Get Outlook for iOS

On Wed, Mar 18, 2020 at 7:08 PM -0500, "Katherine Siereveld" <ksiereveld@bop.gov> wrote:

> A court order was not previously required because he was in clemency procedures only.  Since he is in front of several courts right now, to include one proceeding specifically regarding his mental state, I will need to run it up the chain and see if a court order will be required.  Also, I'm not sure what you mean regarding "yet unknown COVID-19 restrictions"...are you asking a question about the COVID-19 concerns at the institution?
> Thanks,
> Katherine
>
> >>> Michelle Law <Michelle_Law@fd.org> 3/18/2020 11:29 AM >>>
>
> Katherine – We attempted to schedule Dr. Agharkar for a visit with Wesley Purkey on March 31, but our visit was ultimately canceled due to the COVID-19 issue and due to an unresolved issue regarding the need for a court order.  We would like to schedule a visit between Dr. Agharkar and Mr. Purkey on Wed., May 12, from 11:30 a.m. – 2:30 p.m. under the same conditions existing when Dr. Agharkar visited Mr. Purkey twice before (subject to yet unknown COVID-19 restrictions).  Will this visit be approved as it was for Dr. Agharkar's two prior visits, or is a court order required?
>
> Thanks-
>
> Michelle



**Michelle M. Law**
Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee (s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

## Katherine Siereveld - Re: Purkey- expert visitation

| | |
|---|---|
| **From:** | Katherine Siereveld |
| **To:** | Rebecca Woodman |
| **Date:** | 7/4/2020 9:34 AM |
| **Subject:** | Re: Purkey- expert visitation |
| **CC:** | Brian Casey; BrianFleming; ChasMcAleer; MichelleLaw; Rick Winter |

Hi Rebecca,

This is in response to your last three emails.

Unfortunately, due to security concerns, outside entities are unable to schedule testing for inmates. Additionally, the facility you identified is out of network for us and we cannot take inmates there. Our Naphcare schedulers have been able to identify another hospital that can also perform the testing you have requested. Since the PET scan involves a rarely-utilized $17,000 isotope which is not kept in stock at the hospital, they require written assurances before they can finalize scheduling. The BOP is prepared to provide those written assurances as soon as we receive written confirmation from you that you will reimburse the BOP for all costs associated with the testing you have requested. To be clear, the testing is being scheduled without the assurances in hand, but we cannot complete the testing without them. The testing is being scheduled for next week.

When BOP personnel transport inmates to the hospital, all personnel and the inmate wear masks, utilize sanitizer and gloves when necessary, and follow all CDC guidelines. Once at the hospital, both the escorting staff and the inmate will follow any rules put in place by the treating hospital.

With regard to the requested medical and psychological records, in an effort to streamline your request, I have provided Mr. Purkey's entire medical and psychological files to the AUSAs involved in his case (copied here). They have agreed to produce the same to you under the rules for discovery.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/2/2020 5:53 PM >>>
Dear Katherine:

Following up on my email yesterday transmitting the medical orders issued by Dr. Hyde, we have spoken with the hospital today and confirmed they have considerable scheduling availability next week for the tests and imaging. You should presumptively assume that the tests will occur next Tuesday, July 7, and, because of the required separation, on Thursday, July 9. We request that you make the necessary transportation arrangements accordingly.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.

Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Rebecca Woodman <rewlaw@outlook.com>
**Date:** Wednesday, July 1, 2020 at 5:04 PM
**To:** Katherine Siereveld <ksiereveld@bop.gov>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Dear Katherine:

Further to my email yesterday, Thomas M. Hyde, M.D., Ph. D., has issued the attached medical orders for the testing and imaging we have previously identified to you.  My understanding is that the specific facility within the Indiana University Health System at which the testing and imaging will be performed is the Methodist Hospital in Indianapolis.  We are seeking to confirm the scheduling of the testing and imaging for two days next week, possibly Tuesday, July 7 and Thursday, July 9.  We will confirm with you the specific scheduling once we have confirmation so that you can make the necessary transportation arrangements for Mr. Purkey.

In the meantime, please let me know if you have any questions regarding the foregoing.

Sincerely,
Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Friday, June 26, 2020 at 12:34 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,

I think there may be some confusion regarding the COVID-19 testing data you are seeking.  You are correct that the BOP webpage did not initially have detailed data about the testing, but that is no longer the case.  If you scroll to the section after the facility-by-facility breakdown of active cases, you

will see a section which details the numbers of completed tests, pending tests, and positive tests. That data is shown both in the aggregate and for each facility. The data is further explained on the webpage under the heading "About the Data" which I have copied here:

*About the Data*
*These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP**. The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.*

As for the sanitation stations, yes, those include hand sanitizer and individual sanitizing wipes liberally available at points between the front entrance and the SCU. This is obviously in addition to the soap and water provided in the restrooms, and any additional sanitizer you wish to request from staff. The individual visiting rooms are wiped down before and after visits. Additionally, to the extent possible, we are attempting to assign visiting spaces to each inmate. For example, we have 3 non-contact visiting rooms and have so far only had social visits requested for 3 inmates. Until we have more than those three, our intent is to assign one visiting room to a particular inmate to further reduce any possibility of cross-contamination.

I am unaware of any outstanding requests for medical and psychological records, but if you can let me know when and how you requested them, that can help me track them down. As a general rule, the two quickest ways to receive medical and psych files is for either your client to request a copy of his own records via a request to staff, which he can then forward to you; or, request those records through the discovery process.

With regard to the outside testing you are now requesting, we cannot provide you with specifics as to the logistics for security reasons. Once the tests are confirmed, we will be able to advise that one or more facilities will be able to conduct the testing you have requested within the diagnostic parameters you have outlined. You will receive the results which will have the names of the facilities and medical personnel as part of the records. To that end, I will let you know if any additional information is required to successfully schedule those tests.

The BOP does not pay for unnecessary outside tests on inmates which are not clinically indicated. Per our medical and psychology staff, a review of Mr. Purkey's records reveals no clinical indication for the testing you are requesting. Our medical and psychology staff simply cannot order testing which they do not believe is necessary to the care of that individual. Please let us know how you would like to proceed.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 6/25/2020 8:39 PM >>>
Hi Katherine:

Thank you for your emails dated June 24, 2020 (4:26 p.m.) and today at 1:02 p.m. In response, and further to my prior emails on this topic, including in particular my email dated June 20, 2020 (12:55 p.m.), I respond as follows.

Once again, your plan for visits at USP Terre Haute, which appears to be materially unchanged from the plan

that was implemented prior to the COVID-19 lockdown, remains insufficient to address our concerns.

As I have stated numerous times, in order for us to make informed decisions about the safety of any visitation at USP Terre Haute – whether by Mr. Purkey's legal counsel, expert witnesses, spiritual advisors, friends or family members -- we need much more information. The critical nature of the associated risks and the essential role of data to make safety determinations should come as no surprise to you.  Indeed, the need for extensive information to evaluate COVID-19 related health risks in prisons is the subject of virtually daily court opinions (*see* the attached June 18, 2020, decision by the U.S. District Court for the District of Columbia) and media exposes.  *See* T. Thomas, "How U.S. Prisons Became Ground Zero for Covid-19," *Politico* (June 25, 2020), https://www.politico.com/news/magazine/2020/06/25/criminal-justice-prison-conditions-coronavirus-in-prisons-338022.

For example, you still have not provided all the testing data we and our experts need to evaluate the risks associated with visitations and to develop necessary mitigation risks. We are well aware of the COVID-19 statistics reporting the  number of confirmed positive cases posted on BOP's website. We are requesting critical contextual information about those positive numbers, including information about the numbers of tests administered, the number of pending test results, and the numbers of positive and negative results.  We have requested this information from you and in our court filings, but the answers have still not been forthcoming.

Additionally, we have no information from you at this time about sanitation, the frequency of surface cleaning and disinfecting throughout the buildings from the front door entry point to the visitation booths, and I have no idea what you mean when you refer to "sanitizing stations." Is that shorthand for the hand sanitizer you've mentioned in our previous correspondence? Nor is it clear what you mean by "successful visiting for the inmates who have execution dates" – since COVID-19 has a 2-14 day incubation period following exposure to the virus, the mere fact that a visitation has taken place is in no way an indicator of "success," however defined.  (It is worth noting that the apparent continued prohibition on visitations with prisoners at USP Terre Haute who are not facing execution is proof enough of the high risk to which prisoners, staff and visitors are exposed at the prison.  "Excepting" certain prisoners for pre-execution visitations does not preclude that risk.)

Leaving aside what your willingness and apparent ability now to grant Mr. Purkey an exception to be tested says about your previous insistence on a court order (which we sought but were denied in prior litigation because there was not a *Ford* claim pending, which there now is in federal district court), many questions remain before we can go forward with any testing. Specifically, we need to know the precise logistics of accomplishing the testing in the short time period available. In which hospital will the testing take place? Does the hospital have the equipment and personnel available to conduct the blood tests, MRI, DTI, two types of PET scans (one using a radioactive tracer to measure glucose metabolism in regions of the brain , and a second measuring the deposition of an abnormal protein in the brain called amyloid-b), and EEG that we are requesting? We need to know the logistics of transporting our client for the testing, e.g., how will it be done safely, when it can be done, what steps need to be taken in order to facilitate transportation, such as what sort of paperwork will be required?

With respect to the issue of blood tests, and given that Mr. Purkey will need to be transported to a hospital for the necessary imaging tests, it seems unnecessary for prison staff to conduct the necessary blood tests, which can be performed by hospital staff.  However, to respond to your inquiry, the necessary blood tests would include the following (please excuse any layperson imprecision):

Complete Blood count and differential;
Fasting blood glucose;
Liver function tests AST ALT GGT;
Bilirubin level;
Renal function (BUN and creatine);

Thyroid;
Lyme;
Syphilis;
HIV;
B12; and
Folate.

Finally, we are not prepared to accept your denial of responsibility for the costs of testing, particularly your apparent justification that the requested testing is not "clinically indicated." We have submitted substantial evidence in the pending *Ford* litigation to demonstrate that such testing is, in fact, warranted and clinically indicated, regardless of how such testing might also inform adjudication of the pending litigation. That conclusion will become even more evident when we and our experts are able to review Mr. Purkey's complete medical records and video surveillance records, which we have been repeatedly requesting and which have been withheld from us. Indeed, those records may demonstrate in further detail that the requested testing has been "clinically indicated" for some time but not administered by the Bureau of Prisons.

In closing, having confirmed for you the necessary blood tests and imaging that need to occur, we will await the details regarding how that testing will be implemented. We will also await the full scope of COVID-19 related information we have requested and, whether extant or not, the details of all of the safety protocols necessary to protect the health of Mr. Purkey, prison staff and visitors given the COVID-19 statistics and conditions of the prison, on the basis of which we and our experts can determine whether and under what circumstances visits with Mr. Purkey can be scheduled and safely conducted.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Thursday, June 25, 2020 at 1:02 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
I have re-attached the email chain between Michelle Law and myself regarding the costs of the different tests which were discussed at that time. As a reminder, the BOP cannot order or pay for testing which is not clinically indicated. I am working to confirm that those costs are consistent with what they would be today. The security costs will likely remain the same, but I am running that to ground as well. Please let me know as soon as possible the specific parameters of the additional testing which was not previously identified so I can get cost estimates to you and we can begin scheduling.
Thanks,
Katherine

>>> Katherine Siereveld 6/24/2020 4:25 PM >>>
Hi Rebecca,

As discussed in our prior emails, the BOP's plan for legal visits can be found on the BOP website, https://www.bop.gov/coronavirus/covid19_status.jsp.  Additionally, the Terre Haute specific numbers you requested can be found here:  https://www.bop.gov/coronavirus/.  I also advised that masks are to be worn at all times in the facility.  If you do not have a mask, one will be provided to you.  Additionally, we have sanitizing stations available and plexiglass has been installed in the contact visitation booth.  We have already begun successful visiting for the inmates who received execution dates.  It is unclear what additional protocols you are seeking.

In the email chain you attached between Ms. Law and I, it was clear that she was seeking a court order.  While it is still our position that any medical or psychological testing which is not clinically indicated (such as this) requires a court order, we recognize the urgency of the time frame and are willing to make an exception if you did not yet obtain a court order as indicated in the email from 10/4/2019 unless an order was issued denying your request for the outside testing.  Did the Court deny your request or was an order not sought?

BOP staff will not perform any of these tests.  All of the requested tests would need to be performed by outside medical personnel.  The only exception might be the blood tests.  BOP personnel would likely draw the blood and then send to an outside lab for the requested tests.  Do you have a list of the tests?  I believe the two attached orders are all that I have from October 2019.

Finally, I will be in a deposition tomorrow so you will likely receive an out of office reply from me.  I will still have access to email and can step out to call if necessary.

Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/24/2020 9:30 AM >>>
Dear Katherine:

We are waiting for the BOP written safety plan/protocol/policy relating to COVID-19 in order to determine if and when it is safe to schedule an expert visit. I have requested these written materials several times now, and I renew my request here. I appreciate that BOP now appears to be open to testing by our experts after previously refusing to allow this type of testing without a court order. (See attached email correspondence.) Does this constitute a reversal of BOP's prior position? In addition, were such testing to be performed by BOP personnel, we would first need information about who would be administering the tests, the precise equipment that would be used, and the qualifications, training, and experience of the personnel who would be administering the following tests that we require:

     1.   An MRI with and without contrast,

2. Two types of PET scans

3. An EEG

4. A variety of blood tests

5. A lumbar puncture and cerebrospinal fluid assays (spinal tap)

6. A DTI scan

Please provide the requested information on or before close of business on Friday, June 26, 2020, so that we can make an informed judgment about scheduling expert visits.

Best,

Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Tuesday, June 23, 2020 at 12:48 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
Just following up on this.  I know we discussed expert visits during our conversation, but I don't recall if you have made arrangements for Dr. DeRight to come to the institution?  I did not see any follow up information on these specific issues.  I went ahead and had our Medical start working on getting him scheduled for an MRI and EEG, but we will need the parameters the doctor is looking for in addition to the specific blood work he needs.
Thanks,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/15/2020 9:38 AM >>>
Dear Katherine: As you know, our expert neuropsychologist, Dr. Jonathan DeRight, conducted an in-person evaluation of Mr. Purkey last year and found that Mr. Purkey suffers from Alzheimer's disease, a progressive

dementia. Because it has been more than a year since Dr. DeRight last evaluated Mr. Purkey, it is essential that Dr. DeRight conduct an in-person follow-up evaluation to obtain a current assessment of Mr. Purkey and extent of progression of his disease, and we would like to schedule this evaluation as soon as possible. A letter that I received from Dr. DeRight requesting the in-person evaluation is attached. In addition, Dr. DeRight in his letter is requesting up-to-date neuroimaging and blood laboratory results, which are necessary to assessing Mr. Purkey's current abilities and disease progression. I recall that we have discussed ways to accomplish brain imaging tests previously, and we would like to be able to arrange such testing in conjunction with Dr. DeRight's evaluation.

Please let me know of upcoming dates and times for Dr. DeRight to visit Mr. Purkey at USP-Terre Haute to conduct an evaluation, and the logistics of scheduling the requested brain imaging. And please don't hesitate to contact me if you have any questions. Thanks so much.

Best,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

## Katherine Siereveld - Re: Purkey- expert visitation

**From:** Rebecca Woodman <rewlaw@outlook.com>
**To:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** 7/4/2020 3:48 PM
**Subject:** Re: Purkey- expert visitation
**CC:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, BrianF...

Dear Katherine:

Your email makes patently clear that your failure and refusal to produce Mr. Purkey's medical and psychological records over the last nine months was unwarranted, unjustified and tactical. Waiting to deploy this supposed shift in position until a federal holiday weekend which is just 11 days before the scheduled execution is particularly outrageous.

What your email does not make clear is when we will actually receive the records. Since the current position of Defendants' counsel before the Court is that we are not entitled to any discovery or testing, your assertion that they have agreed to produce the records "under the rules of discovery" is rather meaningless. You and/or they should immediately, clearly and unequivocally inform us whether and when we will receive those records. When doing so perhaps you and/or they will also confirm whether and when we will be receiving the videos and recent disciplinary records that we have been requesting as well.

Your email is also unclear regarding where the testing will occur and the contact information for the appropriate persons at that facility. Please provide that information as soon as possible.

Finally, we have repeatedly confirmed to you and in filings with the Court that the Federal Defender Service will front the costs of the requested testing and imaging. However, we need an estimate regarding all of the costs for which you are requesting payment.  Please provide that estimate as soon as possible.

Sincerely,

Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Saturday, July 4, 2020 at 8:35 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, BrianFleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>

**Subject:** Re: Purkey- expert visitation

Hi Rebecca,

This is in response to your last three emails.

Unfortunately, due to security concerns, outside entities are unable to schedule testing for inmates. Additionally, the facility you identified is out of network for us and we cannot take inmates there. Our Naphcare schedulers have been able to identify another hospital that can also perform the testing you have requested. Since the PET scan involves a rarely-utilized $17,000 isotope which is not kept in stock at the hospital, they require written assurances before they can finalize scheduling. The BOP is prepared to provide those written assurances as soon as we receive written confirmation from you that you will reimburse the BOP for all costs associated with the testing you have requested. To be clear, the testing is being scheduled without the assurances in hand, but we cannot complete the testing without them. The testing is being scheduled for next week.

When BOP personnel transport inmates to the hospital, all personnel and the inmate wear masks, utilize sanitizer and gloves when necessary, and follow all CDC guidelines. Once at the hospital, both the escorting staff and the inmate will follow any rules put in place by the treating hospital.

With regard to the requested medical and psychological records, in an effort to streamline your request, I have provided Mr. Purkey's entire medical and psychological files to the AUSAs involved in his case (copied here). They have agreed to produce the same to you under the rules for discovery.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/2/2020 5:53 PM >>>
Dear Katherine:

Following up on my email yesterday transmitting the medical orders issued by Dr. Hyde, we have spoken with the hospital today and confirmed they have considerable scheduling availability next week for the tests and imaging. You should presumptively assume that the tests will occur next Tuesday, July 7, and, because of the required separation, on Thursday, July 9. We request that you make the necessary transportation arrangements accordingly.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Rebecca Woodman <rewlaw@outlook.com>
**Date:** Wednesday, July 1, 2020 at 5:04 PM
**To:** Katherine Siereveld <ksiereveld@bop.gov>

**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Dear Katherine:

Further to my email yesterday, Thomas M. Hyde, M.D., Ph. D., has issued the attached medical orders for the testing and imaging we have previously identified to you.  My understanding is that the specific facility within the Indiana University Health System at which the testing and imaging will be performed is the Methodist Hospital in Indianapolis.  We are seeking to confirm the scheduling of the testing and imaging for two days next week, possibly Tuesday, July 7 and Thursday, July 9.  We will confirm with you the specific scheduling once we have confirmation so that you can make the necessary transportation arrangements for Mr. Purkey.

In the meantime, please let me know if you have any questions regarding the foregoing.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Friday, June 26, 2020 at 12:34 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, MichelleLaw <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, ChasMcAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,

I think there may be some confusion regarding the COVID-19 testing data you are seeking.  You are correct that the BOP webpage did not initially have detailed data about the testing, but that is no longer the case.  If you scroll to the section after the facility-by-facility breakdown of active cases, you will see a section which details the numbers of completed tests, pending tests, and positive tests.  That data is shown both in the aggregate and for each facility.  The data is further explained on the webpage under the heading "About the Data" which I have copied here:

*About the Data*
*These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting.* ***Not all tests are conducted by and/or reported to BOP.*** *The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of*

*persons at the specific facility who have been tested, whether at that site or at a prior facility.* As for the sanitation stations, yes, those include hand sanitizer and individual sanitizing wipes liberally available at points between the front entrance and the SCU. This is obviously in addition to the soap and water provided in the restrooms, and any additional sanitizer you wish to request from staff. The individual visiting rooms are wiped down before and after visits. Additionally, to the extent possible, we are attempting to assign visiting spaces to each inmate. For example, we have 3 non-contact visiting rooms and have so far only had social visits requested for 3 inmates. Until we have more than those three, our intent is to assign one visiting room to a particular inmate to further reduce any possibility of cross-contamination.

I am unaware of any outstanding requests for medical and psychological records, but if you can let me know when and how you requested them, that can help me track them down. As a general rule, the two quickest ways to receive medical and psych files is for either your client to request a copy of his own records via a request to staff, which he can then forward to you; or, request those records through the discovery process.

With regard to the outside testing you are now requesting, we cannot provide you with specifics as to the logistics for security reasons. Once the tests are confirmed, we will be able to advise that one or more facilities will be able to conduct the testing you have requested within the diagnostic parameters you have outlined. You will receive the results which will have the names of the facilities and medical personnel as part of the records. To that end, I will let you know if any additional information is required to successfully schedule those tests.

The BOP does not pay for unnecessary outside tests on inmates which are not clinically indicated. Per our medical and psychology staff, a review of Mr. Purkey's records reveals no clinical indication for the testing you are requesting. Our medical and psychology staff simply cannot order testing which they do not believe is necessary to the care of that individual. Please let us know how you would like to proceed.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 6/25/2020 8:39 PM >>>
Hi Katherine:

Thank you for your emails dated June 24, 2020 (4:26 p.m.) and today at 1:02 p.m. In response, and further to my prior emails on this topic, including in particular my email dated June 20, 2020 (12:55 p.m.), I respond as follows.

Once again, your plan for visits at USP Terre Haute, which appears to be materially unchanged from the plan that was implemented prior to the COVID-19 lockdown, remains insufficient to address our concerns.

As I have stated numerous times, in order for us to make informed decisions about the safety of any visitation at USP Terre Haute – whether by Mr. Purkey's legal counsel, expert witnesses, spiritual advisors, friends or family members -- we need much more information. The critical nature of the associated risks and the essential role of data to make safety determinations should come as no surprise to you. Indeed, the need for extensive information to evaluate COVID-19 related health risks in prisons is the subject of virtually daily court opinions (*see* the attached June 18, 2020, decision by the U.S. District Court for the District of Columbia) and media exposes. *See* T. Thomas, "How U.S. Prisons Became Ground Zero for Covid-19," *Politico* (June 25, 2020), https://www.politico.com/news/magazine/2020/06/25/criminal-justice-prison-conditions-coronavirus-in-

prisons-338022.

For example, you still have not provided all the testing data we and our experts need to evaluate the risks associated with visitations and to develop necessary mitigation risks. We are well aware of the COVID-19 statistics reporting the number of confirmed positive cases posted on BOP's website. We are requesting critical contextual information about those positive numbers, including information about the numbers of tests administered, the number of pending test results, and the numbers of positive and negative results. We have requested this information from you and in our court filings, but the answers have still not been forthcoming.

Additionally, we have no information from you at this time about sanitation, the frequency of surface cleaning and disinfecting throughout the buildings from the front door entry point to the visitation booths, and I have no idea what you mean when you refer to "sanitizing stations." Is that shorthand for the hand sanitizer you've mentioned in our previous correspondence? Nor is it clear what you mean by "successful visiting for the inmates who have execution dates" – since COVID-19 has a 2-14 day incubation period following exposure to the virus, the mere fact that a visitation has taken place is in no way an indicator of "success," however defined. (It is worth noting that the apparent continued prohibition on visitations with prisoners at USP Terre Haute who are not facing execution is proof enough of the high risk to which prisoners, staff and visitors are exposed at the prison. "Excepting" certain prisoners for pre-execution visitations does not preclude that risk.)

Leaving aside what your willingness and apparent ability now to grant Mr. Purkey an exception to be tested says about your previous insistence on a court order (which we sought but were denied in prior litigation because there was not a *Ford* claim pending, which there now is in federal district court), many questions remain before we can go forward with any testing. Specifically, we need to know the precise logistics of accomplishing the testing in the short time period available. In which hospital will the testing take place? Does the hospital have the equipment and personnel available to conduct the blood tests, MRI, DTI, two types of PET scans (one using a radioactive tracer to measure glucose metabolism in regions of the brain , and a second measuring the deposition of an abnormal protein in the brain called amyloid-b), and EEG that we are requesting? We need to know the logistics of transporting our client for the testing, e.g., how will it be done safely, when it can be done, what steps need to be taken in order to facilitate transportation, such as what sort of paperwork will be required?

With respect to the issue of blood tests, and given that Mr. Purkey will need to be transported to a hospital for the necessary imaging tests, it seems unnecessary for prison staff to conduct the necessary blood tests, which can be performed by hospital staff. However, to respond to your inquiry, the necessary blood tests would include the following (please excuse any layperson imprecision):

Complete Blood count and differential;
Fasting blood glucose;
Liver function tests AST ALT GGT;
Bilirubin level;
Renal function (BUN and creatine);
Thyroid;
Lyme;
Syphilis;
HIV;
B12; and
Folate.

Finally, we are not prepared to accept your denial of responsibility for the costs of testing, particularly your apparent justification that the requested testing is not "clinically indicated." We have submitted substantial evidence in the pending *Ford* litigation to demonstrate that such testing is, in fact, warranted and clinically

indicated, regardless of how such testing might also inform adjudication of the pending litigation. That conclusion will become even more evident when we and our experts are able to review Mr. Purkey's complete medical records and video surveillance records, which we have been repeatedly requesting and which have been withheld from us. Indeed, those records may demonstrate in further detail that the requested testing has been "clinically indicated" for some time but not administered by the Bureau of Prisons.

In closing, having confirmed for you the necessary blood tests and imaging that need to occur, we will await the details regarding how that testing will be implemented. We will also await the full scope of COVID-19 related information we have requested and, whether extant or not, the details of all of the safety protocols necessary to protect the health of Mr. Purkey, prison staff and visitors given the COVID-19 statistics and conditions of the prison, on the basis of which we and our experts can determine whether and under what circumstances visits with Mr. Purkey can be scheduled and safely conducted.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Thursday, June 25, 2020 at 1:02 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
I have re-attached the email chain between Michelle Law and myself regarding the costs of the different tests which were discussed at that time. As a reminder, the BOP cannot order or pay for testing which is not clinically indicated. I am working to confirm that those costs are consistent with what they would be today. The security costs will likely remain the same, but I am running that to ground as well. Please let me know as soon as possible the specific parameters of the additional testing which was not previously identified so I can get cost estimates to you and we can begin scheduling.
Thanks,
Katherine

>>> Katherine Siereveld 6/24/2020 4:25 PM >>>
Hi Rebecca,

As discussed in our prior emails, the BOP's plan for legal visits can be found on the BOP website, https://www.bop.gov/coronavirus/covid19_status.jsp. Additionally, the Terre Haute specific numbers you requested can be found here: https://www.bop.gov/coronavirus/. I also advised that masks are to be worn at all times in the facility. If you do not have a mask, one will be provided to you. Additionally, we have sanitizing stations available and plexiglass has been installed in the contact visitation booth. We have already begun successful visiting for the inmates who received execution dates. It is unclear what additional

protocols you are seeking.

In the email chain you attached between Ms. Law and I, it was clear that she was seeking a court order. While it is still our position that any medical or psychological testing which is not clinically indicated (such as this) requires a court order, we recognize the urgency of the time frame and are willing to make an exception if you did not yet obtain a court order as indicated in the email from 10/4/2019 unless an order was issued denying your request for the outside testing. Did the Court deny your request or was an order not sought?

BOP staff will not perform any of these tests. All of the requested tests would need to be performed by outside medical personnel. The only exception might be the blood tests. BOP personnel would likely draw the blood and then send to an outside lab for the requested tests. Do you have a list of the tests? I believe the two attached orders are all that I have from October 2019.

Finally, I will be in a deposition tomorrow so you will likely receive an out of office reply from me. I will still have access to email and can step out to call if necessary.

Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/24/2020 9:30 AM >>>
Dear Katherine:

We are waiting for the BOP written safety plan/protocol/policy relating to COVID-19 in order to determine if and when it is safe to schedule an expert visit. I have requested these written materials several times now, and I renew my request here. I appreciate that BOP now appears to be open to testing by our experts after previously refusing to allow this type of testing without a court order. (See attached email correspondence.) Does this constitute a reversal of BOP's prior position? In addition, were such testing to be performed by BOP personnel, we would first need information about who would be administering the tests, the precise equipment that would be used, and the qualifications, training, and experience of the personnel who would be administering the following tests that we require:

1. An MRI with and without contrast,

2. Two types of PET scans

3. An EEG

4. A variety of blood tests

5. A lumbar puncture and cerebrospinal fluid assays (spinal tap)

6. A DTI scan

Please provide the requested information on or before close of business on Friday, June 26, 2020, so that we can

make an informed judgment about scheduling expert visits.

Best,

Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Tuesday, June 23, 2020 at 12:48 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
Just following up on this.  I know we discussed expert visits during our conversation, but I don't recall if you have made arrangements for Dr. DeRight to come to the institution?  I did not see any follow up information on these specific issues.  I went ahead and had our Medical start working on getting him scheduled for an MRI and EEG, but we will need the parameters the doctor is looking for in addition to the specific blood work he needs.
Thanks,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/15/2020 9:38 AM >>>
Dear Katherine: As you know, our expert neuropsychologist, Dr. Jonathan DeRight, conducted an in-person evaluation of Mr. Purkey last year and found that Mr. Purkey suffers from Alzheimer's disease, a progressive dementia. Because it has been more than a year since Dr. DeRight last evaluated Mr. Purkey, it is essential that Dr. DeRight conduct an in-person follow-up evaluation to obtain a current assessment of Mr. Purkey and extent of progression of his disease, and we would like to schedule this evaluation as soon as possible. A letter that I received from Dr. DeRight requesting the in-person evaluation is attached. In addition, Dr. DeRight in his letter is requesting up-to-date neuroimaging and blood laboratory results, which are necessary to assessing Mr. Purkey's current abilities and disease progression. I recall that we have discussed ways to accomplish brain imaging tests previously, and we would like to be able to arrange such testing in conjunction with Dr. DeRight's evaluation.

Please let me know of upcoming dates and times for Dr. DeRight to visit Mr. Purkey at USP-Terre Haute to conduct an evaluation, and the logistics of scheduling the requested brain imaging. And please don't hesitate to contact me if you have any questions. Thanks so much.

Best,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

# Katherine Siereveld - Re: Purkey Medical Tests-- Contract for Reimbursement

**From:** Rebecca Woodman <rewlaw@outlook.com>
**To:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** 7/13/2020 10:57 AM
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement
**CC:** "McAleer, Chas" <CMcAleer@milchev.com>, "Fleming, Brian" <bfleming@milch...

Dear Katherine:

Any reports generated from the testing our expert ordered for Mr. Purkey should be delivered to us immediately, and exclusively. We had thought your delay until Friday COB to purportedly overnight the disc containing the images and scans produced during the testing ordered by our expert Dr. Hyde was so that all of the scans and images processed during testing performed on Mr. Purkey, on both July 8 and July 10, would be included in the package. Not only did you fail to provide the scans and images that you insisted would be delivered to Dr. Hyde on Saturday, but now we learn that you are only just receiving the results of the additional tests performed on Friday, only two days before Mr. Purkey's scheduled execution. This is plainly inexcusable, and is evidence of your continued bad faith in refusing to provide information so that the healthcare professionals working on Mr. Purkey's behalf and serving as our experts can begin to analyze that information. We still, at this late date, do not have Mr. Purkey's medical and psychological records that we have continuously requested for nine months and which, 19 days after Mr. Purkey was facing a new execution date, and on a holiday, you suddenly and easily produced and turned over to the AUSAs and then meaninglessly claimed – given the Defendants' opposition to our discovery requests – would be provided to us "through the discovery process." That was 9 days ago, and the documents still have not been provided to us.

While you seem to have quite successfully prevented our experts from having sufficient access before the scheduled execution to the actual scans and imaging they sought and Dr. Hyde ordered, let us be very clear in response to whether we want "reports" regarding the second PET scan and EEG by email. We have only ever sought, and we continue to insist on, the actual scans and imaging themselves that Dr. Hyde, not the BOP or anyone else, ordered, expected to receive in a timely manner and were prepared to review and assess. Your continued failure and refusal to comply with those expectations and requests in a timely manner is unacceptable and should weigh heavily on your conscience.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Monday, July 13, 2020 at 6:58 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

We just got the PET scan report back.  Do you want it via email?  They said they are just waiting on EEG report now.

>>> Rebecca Woodman <rewlaw@outlook.com> 7/9/2020 6:00 PM >>>
Dear Katherine:

Back online now, at least for the time being.

Please overnight the disc containing the scans and images to the following address:

Thomas M. Hyde, M.D., Ph.D
2829 Greenvale Street
Chevy Chase, MD 20815

Thank you.

Sincerely,
Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Thursday, July 9, 2020 at 4:22 PM
**To:** Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, Rebecca Woodman <rewlaw@outlook.com>
**Subject:** RE: Purkey Medical Tests-- Contract for Reimbursement

Hello all,

The orders were written per your expert's direction and then sent to NaphCare who then scheduled all of the testing.  The medical records can only be released to the BOP through our contractor NaphCare, just as the testing has to be ordered through us, since Mr. Purkey is in the custody of the BOP.  The actual images need to be put onto a disc.  We do not have those yet.  Do you want those overnighted to you?  It is my understanding that a disc can be given to our staff as they leave the facility with Mr. Purkey as opposed to waiting for them to reach us in the mail.  To what address should we send the disc?  I asked if they can be sent directly to you from the hospital, but they cannot.  We do not deal directly with the facility, only our schedulers, who deal with their schedulers.  Outside of a logistical issue such as the spinal tap/blood work question yesterday, our medical staff do not have reason to interact in medical testing they have not deemed clinically necessary.
Thanks,
Katherine

>>> "McAleer, Chas" <CMcAleer@milchev.com> 7/9/2020 2:07 PM >>>
Ms. Siereveld:

My co-counsel, Rebecca Woodman, currently lacks internet access.  Given the present exigencies, she has asked me to transmit the following message from her to you regarding your emails earlier today.

"Katherine:

We have a couple of questions regarding the emails you sent today.

1.  Why did the Bureau of Prisons  -- and, at least by copy of your transmittal emails, defense counsel -- receive, and you have now transmitted, documentation relating to the testing and imaging that one of our medical experts, Dr. Thomas Hyde, ordered and for which you insisted the Federal Defender Service must pay?  How is your receipt and transmission of the documents in your emails consistent with Mr. Purkey's rights under HIPPA?

2.  Who directed the physicians who issued their analyses of the first PET scan and the MRI imaging to prepare those written reports?  What oral and written communications occurred between the Bureau of Prisons and those doctors regarding Mr. Purkey and the testing and imaging ordered by Dr. Hyde?

3.  Have you or anyone else at the Bureau of Prisons been given access to, provided copies of and/or shown the actual scans and images themselves?

4.  We need the actual scans and images themselves immediately so that Dr. Hyde can conduct his own analysis of the scans and images that he ordered.  As we have repeatedly requested, please provide us with contact information for the persons at the facility with whom you have been dealing and who currently have possession of the scans and images.

We await your immediate responses to the foregoing.

Sincerely,

 --Rebecca"

**CHARLES F. B. MCALEER, JR.**
Member | Miller & Chevalier Chartered
cmcaleer@milchev.com | T. 202.626.5963 | M. 571.216.9584

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Sent:** Thursday, July 9, 2020 11:41 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Michelle Law <Michelle_Law@fd.org>; Fleming, Brian <bfleming@milchev.com>; McAleer, Chas <CMcAleer@milchev.com>; Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

**EXTERNAL**

---

MRI attached.  Also, I was told that FDG scan I just sent you is part 1 of the PET scan.

>>> Rebecca Woodman <rewlaw@outlook.com> 7/8/2020 3:12 PM >>>
It's fine to do the blood test for syphilis. Thanks.

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Wednesday, July 8, 2020 at 1:04 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi Rebecca,
Just checking in to see if there is an update.
Thank you!

>>> Rebecca Woodman <rewlaw@outlook.com> 7/8/2020 12:17 PM >>>
We are checking on this and will get back to you as soon as possible.

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Wednesday, July 8, 2020 at 11:01 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi all,
I just spoke to Dr. Wilson who was called by the hospital where they are performing all of the testing you requested. The hospital is concerned/questioning the test you have requested for syphilis. The hospital has advised that it calls for a lumbar puncture which would involve a neurologist, but have advised that they could determine the same information with a far less invasive blood test. They are concerned that it is unnecessarily invasive. Dr. Wilson said that he will order the more invasive lumbar puncture, but wanted clarification that you did not want the less-invasive blood test before doing so. Please advise ASAP.
Thank you,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/7/2020 11:00 AM >>>

Dear Katherine:

In my email to you three days ago, I asked you to provide me the details for the facility at which the testing and imaging ordered by our expert will be performed and the contact information for all appropriate persons at that facility who will be involved in scheduling and administering the testing and imaging. You have yet to provide me that information which I find inexcusable. Please do so immediately.

Also, please be advised, as we will also advise the facility, that the testing and imaging must be processed as quickly as possible, consistent with sound medical and scientific practices, and that we must be immediately and exclusively notified and provided copies of the results of the testing and imaging so that the healthcare professionals who are actually working on Mr. Purkey's behalf and serving as our experts in this case can begin analyzing them.

Finally, we still do not have Mr. Purkey's complete medical and psychological records, further underscoring our characterization of your July 4 email regarding those records as quite meaningless.

Sincerely,
Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Tuesday, July 7, 2020 at 6:08 AM
**To:** Michelle Law <Michelle_Law@fd.org>
**Cc:** Chas McAleer <CMcAleer@milchev.com>, Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi Michelle,
They are still getting all of the price breakdowns for me. The tests are scheduled and will go forward. I have not had anyone ask me about a contract from you, I think the email from Rebecca (and this one from you) should be sufficient. Apparently, the way that it works is that NaphCare will pay as they usually do and then you will reimburse them. I will get an itemized statement ASAP.
Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Michelle Law <Michelle_Law@fd.org> 7/6/2020 4:50 PM >>>

Katherine:

As we have previously indicated to you and the court, the Federal Defender (FD) will reimburse the BOP for the cost of medical tests ordered by Dr. Hyde. To provide written assurance, the FD will enter into a contract with the BOP to provide payment for the medical tests. To write the contract, however, I need to know the cost of each test (which we requested several days ago) and the name of the person who will execute the contract on behalf of the BOP. Once this information is provided, I'll promptly send a written contract to the BOP official designated to execute the contract.

Thanks –

Michelle



## Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail. Thank you for your cooperation.

## Katherine Siereveld - RE: Purkey PET report

**From:** Michelle Law <Michelle_Law@fd.org>
**To:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** 7/13/2020 11:20 AM
**Subject:** RE: Purkey PET report

Thanks, Katherine.



### Michelle M. Law
Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail. Thank you for your cooperation.

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Sent:** Monday, July 13, 2020 10:07 AM
**To:** Michelle Law <Michelle_Law@fd.org>
**Subject:** Purkey PET report

Hi Michelle,

I've attached the report that was sent to us on the PET scan. I was advised that the only report which is not back yet is the EEG. I'll forward it on as soon as I get it.

I appreciate your continued professionalism during this incredibly stressful time for your whole team.

Thanks,
Katherine

Katherine N. Siereveld

Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476

## Katherine Siereveld - Re: Purkey Medical Tests-- Contract for Reimbursement

**From:** Katherine Siereveld

**To:** Brian Casey; Chas McAleer; Rebecca Woodman

**Date:** 7/12/2020 1:09 PM

**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

**CC:** Brian Fleming; Michelle Law

Apparently, after I placed the FedEx in our pickup location, but before FedEx arrived, all delivery movement was stopped on the grounds. It never left. FedEx pickups are all closed today. The package will be taken to the FedEx facility in Terre Haute first thing tomorrow and you should be able to track it from there.

Thanks,

Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/12/2020 10:30 AM >>>

Dear Katherine:

Following up on your email response yesterday. Dr. Hyde still has not received delivery of the scans and imaging. Please specify further:

1.  Was the package containing the scans and imaging picked up by FedEx on Friday for Saturday delivery?

2.  What is the current location and status of the package?

3.  Did you receive any notice from FedEx that the delivery was not received yesterday?

4.  What are you going to do to remedy this appalling failure to provide the actual scans and imaging, particularly given the impending July 15, 2020 execution date.

We expect your answers immediately.

Sincerely,

Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

**From:** Katherine Siereveld <ksiereveld@bop.gov>

**Date:** Saturday, July 11, 2020 at 9:15 PM

**To:** Chas McAleer <CMcAleer@milchev.com>, Rebecca Woodman <rewlaw@outlook.com>, Brian Casey <Brian.Casey@usdoj.gov>

**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>

**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi Rebecca,
It was FedEx.  It should have left with the FedEx pickup on Friday with a Saturday delivery, signature required, as I sent you before.

I'll see if I can find out where it is, but I don't have any idea why he wouldn't have it.
Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/11/2020 10:10 PM >>>
 Dear Katherine:

 Dr. Hyde did not receive delivery of the scans and imaging today.  We find that unacceptable. Please specify the following:

 1.  When did you send the package to Dr. Hyde?

2.  By what service did you send the package?  A tracking number does us no good if we do not know what delivery service you used. We checked the tracking number with FedEx, and it came back with the following message: "**Not found**
This tracking number cannot be found, please check the number or contact the sender." We checked other delivery services (UPS, DHL, USPS) and received a similar message.

 3.  What did you designate regarding the day/time of delivery?

 4.  Did you receive any notice that the delivery was not received today?

 5.  What are you going to do to remedy this appalling failure to provide the actual scans and imaging, particularly given the impending July 15, 2020 execution date.

 We expect your answers immediately.

 Sincerely,
 Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Friday, July 10, 2020 at 2:28 PM
**To:** Chas McAleer <CMcAleer@milchev.com>, Rebecca Woodman <rewlaw@outlook.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>

**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

The tracking number is 8574 3618 8324.
It has Saturday delivery and a signature required.  Please let the doctor know.
Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/9/2020 6:00 PM >>>
Dear Katherine:

Back online now, at least for the time being.

Please overnight the disc containing the scans and images to the following address:

Thomas M. Hyde, M.D., Ph.D
2829 Greenvale Street
Chevy Chase, MD 20815

Thank you.

Sincerely,
Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com


---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Thursday, July 9, 2020 at 4:22 PM
**To:** Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, Rebecca Woodman <rewlaw@outlook.com>
**Subject:** RE: Purkey Medical Tests-- Contract for Reimbursement

Hello all,

The orders were written per your expert's direction and then sent to NaphCare who then scheduled all of the testing.  The medical records can only be released to the BOP through our contractor NaphCare, just as the testing has to be ordered through us, since Mr. Purkey is in the custody of the BOP.  The actual images need to be put onto a disc.  We do not have those yet.  Do you want those overnighted to you?  It is my understanding that a disc can be given to our staff as they leave the facility with Mr. Purkey as opposed to waiting for them to reach us in the mail.  To what address should we send the disc?  I asked if they can be sent directly to you from the hospital, but they cannot.  We do not deal directly with the facility, only our schedulers, who deal with their schedulers.  Outside of a logistical issue such as the spinal tap/blood work question yesterday, our medical staff do not have reason to interact in medical testing they have not deemed clinically necessary.

Thanks,
Katherine


>>> "McAleer, Chas" <CMcAleer@milchev.com> 7/9/2020 2:07 PM >>>
Ms. Siereveld:

My co-counsel, Rebecca Woodman, currently lacks internet access.  Given the present exigencies, she has asked me to transmit the following message from her to you regarding your emails earlier today.

"Katherine:

We have a couple of questions regarding the emails you sent today.

1.  Why did the Bureau of Prisons  -- and, at least by copy of your transmittal emails, defense counsel -- receive, and you have now transmitted, documentation relating to the testing and imaging that one of our medical experts, Dr. Thomas Hyde, ordered and for which you insisted the Federal Defender Service must pay?  How is your receipt and transmission of the documents in your emails consistent with Mr. Purkey's rights under HIPPA?

2.  Who directed the physicians who issued their analyses of the first PET scan and the MRI imaging to prepare those written reports?  What oral and written communications occurred between the Bureau of Prisons and those doctors regarding Mr. Purkey and the testing and imaging ordered by Dr. Hyde?

3.  Have you or anyone else at the Bureau of Prisons been given access to, provided copies of and/or shown the actual scans and images themselves?

4.  We need the actual scans and images themselves immediately so that Dr. Hyde can conduct his own analysis of the scans and images that he ordered.  As we have repeatedly requested, please provide us with contact information for the persons at the facility with whom you have been dealing and who currently have possession of the scans and images.

We await your immediate responses to the foregoing.

Sincerely,

 --Rebecca"

**CHARLES F. B. MCALEER, JR.**
Member | Miller & Chevalier Chartered
cmcaleer@milchev.com | T. 202.626.5963 | M. 571.216.9584

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Sent:** Thursday, July 9, 2020 11:41 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Michelle Law <Michelle_Law@fd.org>; Fleming, Brian <bfleming@milchev.com>; McAleer, Chas <CMcAleer@milchev.com>; Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

**EXTERNAL**

MRI attached.  Also, I was told that FDG scan I just sent you is part 1 of the PET scan.

>>> Rebecca Woodman <rewlaw@outlook.com> 7/8/2020 3:12 PM >>>
It's fine to do the blood test for syphilis. Thanks.

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Wednesday, July 8, 2020 at 1:04 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi Rebecca,
Just checking in to see if there is an update.
Thank you!

>>> Rebecca Woodman <rewlaw@outlook.com> 7/8/2020 12:17 PM >>>
We are checking on this and will get back to you as soon as possible.

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Wednesday, July 8, 2020 at 11:01 AM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Michelle Law <Michelle_Law@fd.org>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi all,
I just spoke to Dr. Wilson who was called by the hospital where they are performing all of the testing you requested.  The hospital is concerned/questioning the test you have requested for syphilis.  The hospital has advised that it calls for a lumbar puncture which would involve a neurologist, but have advised that they could determine the same information with a far less invasive blood test.  They are concerned that it is unnecessarily invasive.  Dr. Wilson said that he will order the more invasive lumbar puncture, but wanted clarification that

you did not want the less-invasive blood test before doing so. Please advise ASAP.
Thank you,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 7/7/2020 11:00 AM >>>
Dear Katherine:

In my email to you three days ago, I asked you to provide me the details for the facility at which the testing and imaging ordered by our expert will be performed and the contact information for all appropriate persons at that facility who will be involved in scheduling and administering the testing and imaging. You have yet to provide me that information which I find inexcusable. Please do so immediately.

Also, please be advised, as we will also advise the facility, that the testing and imaging must be processed as quickly as possible, consistent with sound medical and scientific practices, and that we must be immediately and exclusively notified and provided copies of the results of the testing and imaging so that the healthcare professionals who are actually working on Mr. Purkey's behalf and serving as our experts in this case can begin analyzing them.

Finally, we still do not have Mr. Purkey's complete medical and psychological records, further underscoring our characterization of your July 4 email regarding those records as quite meaningless.

Sincerely,
Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Tuesday, July 7, 2020 at 6:08 AM
**To:** Michelle Law <Michelle_Law@fd.org>
**Cc:** Chas McAleer <CMcAleer@milchev.com>, Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey Medical Tests-- Contract for Reimbursement

Hi Michelle,
They are still getting all of the price breakdowns for me. The tests are scheduled and will go forward. I have not had anyone ask me about a contract from you, I think the email from Rebecca (and this one from you) should be sufficient. Apparently, the way that it works is that NaphCare will pay as they usually do and then you will reimburse them. I will get an itemized statement ASAP.
Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute

4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476

>>> Michelle Law <Michelle_Law@fd.org> 7/6/2020 4:50 PM >>>

Katherine:

As we have previously indicated to you and the court, the Federal Defender (FD) will reimburse the BOP for the cost of medical tests ordered by Dr. Hyde.  To provide written assurance, the FD will enter into a contract with the BOP to provide payment for the medical tests.  To write the contract, however, I need to know the cost of each test (which we requested several days ago) and the name of the person who will execute the contract on behalf of the BOP.  Once this information is provided, I'll promptly send a written contract to the BOP official designated to execute the contract.

Thanks –

Michelle



## Michelle M. Law

Assistant Federal Public Defender
Western District of Missouri
Springfield, MO 65806

Phone: (417) 873-9022
FAX: (417) 873-9038

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.  Thank you for your cooperation.

**IMPORTANT!**
We are continuing to respond to the impact of COVID-19 around the world. See our latest updates. For COVID-19-related recipient closures, you can redirect packages, Ask FedEx, or contact the shipper.



857436188324      

# Delivered
## Tuesday 7/14/2020 at 11:26 am



**DELIVERED**

Signature not required

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

| FROM | TO |
|---|---|
| TERRE HAUTE, IN US | CHEVY CHASE, MD US |

## Shipment Facts

| **TRACKING NUMBER** | **SERVICE** | **WEIGHT** |
|---|---|---|
| 857436188324 | FedEx Priority Overnight | 0.5 lbs / 0.23 kgs |
| **DELIVERED TO** | **TOTAL PIECES** | **TOTAL SHIPMENT WEIGHT** |
| Residence | 1 | 0.5 lbs / 0.23 kgs |
| **TERMS** | **PACKAGING** | **SPECIAL HANDLING SECTION** |
| Third Party | FedEx Envelope | Deliver Weekday, Residential Delivery |
| **STANDARD TRANSIT** | **SHIP DATE** | **ACTUAL DELIVERY** |
| 7/14/2020 by 10:30 am | Mon 7/13/2020 | Tue 7/14/2020 11:26 am |

## Travel History

Local Scan Time

**Tuesday , 7/14/2020**

| 11:26 am | CHEVY CHASE, MD | Delivered |
|---|---|---|
| | | Left at front door. Package delivered to recipient address - release authorized |
| 8:58 am | ROCKVILLE, MD | On FedEx vehicle for delivery |
| 8:04 am | ROCKVILLE, MD | At local FedEx facility |
| 8:04 am | ROCKVILLE, MD | At local FedEx facility |
| 5:58 am | DULLES, VA | At destination sort facility |

| | | |
|---|---|---|
| 3:20 am | MEMPHIS, TN | Departed FedEx location |
| 12:02 am | MEMPHIS, TN | Arrived at FedEx location |
| Monday , 7/13/2020 | | |
| 11:59 pm | INDIANAPOLIS, IN | Departed FedEx location |
| 9:03 pm | INDIANAPOLIS, IN | Arrived at FedEx location |
| 7:58 pm | TERRE HAUTE, IN | Left FedEx origin facility |
| 9:10 am | TERRE HAUTE, IN | Picked up |
| 8:10 am | | Shipment information sent to FedEx |